**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John HORAK, Defendant-Appellant.**

**and**

**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**John HORAK, Defendant-Appellee.**

**Nos. 86–1473, 86–2700 and 86–2660.**

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1987.

Decided Nov. 5, 1987.

---

Joseph E. Coughlin, Lord, Bissell & Brook, Chicago, Ill., for defendant-appellant.

Mark Pollack, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

Defendant-appellant John Horak was convicted of mail fraud, 18 U.S.C. § 1341, and of conducting the affairs of an enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(c). The district court ordered forfeiture of Horak's job, salary, bonuses and corporate pension and profit-sharing plans from the date of the violation, pursuant to 18 U.S.C. § 1963(a)(1), but held that the conviction did not support forfeiture of Horak's stock in Waste Management, Inc. ("Waste"), under 18 U.S.C. § 1963(a)(2).

Horak appeals his conviction on the ground that the evidence was insufficient to establish a violation of section 1962(c). Horak appeals the order of forfeiture on the grounds that the forfeited interests were not maintained in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO") and that the order violates the Eighth Amendment's proscription against cruel and unusual punishment. The government cross-appeals the denial of its request for forfeiture of Horak's shares in Waste on the ground that the district court incorrectly construed section 1963(a)(2). We affirm Horak's section 1962(c) conviction and the forfeiture order insofar as it relates to Horak's job. We vacate and remand for further consideration the forfeiture order for Horak's salary, bonuses and corporate pension and profit-sharing plans. We dismiss the government's cross-appeal grounded in 18 U.S.C. § 3731 for lack of jurisdiction and decline to issue a writ of mandamus.

## I.

HOD Disposal Service ("H.O.D."), a garbage removal company, services portions of Lake County, Illinois and Wisconsin. Prior to 1972, Horak was the sole owner of H.O.D. In 1972 Waste, a Fortune 500 company with foreign and domestic subsidiaries, purchased H.O.D. from Horak. The payment terms included voting shares in Waste (worth approximately $8 million at the time of trial) and an employment contract for Horak as H.O.D.'s manager. H.O.D. is a division of Waste Management of Illinois ("WM-Ill."), a wholly-owned subsidiary of Waste.

H.O.D. has provided garbage collection services to the Village of Fox Lake, Illinois since 1954. In 1981 Fox Lake solicited bids for a new garbage collection contract. Although not the lowest of the four bids received, H.O.D.'s bid nonetheless was approved in June, 1981. The contract, worth

approximately $700,000, was awarded to H.O.D. in July, 1981 by the six-member board of trustees, which, together with the mayor, governed Fox Lake.

Richard Hamm, the mayor of Fox Lake, and Richard Gerretsen, the mayor's whip on the board of trustees, were the government's chief witnesses in this case. Their cooperation was obtained during an FBI investigation on a separate indictment under which both men were found guilty of extortion and bribery. According to their testimonies, shortly before the Fox Lake contract was to be awarded, Gerretsen and Horak met and reached an agreement that Hamm and Gerretsen each were to be paid $5,000 in periodic payments in exchange for the 1981 contract. Gerretsen testified that he received $5,000 in small increments. Hamm testified that he received $7,000 in small monthly amounts. The extra $2,000 resulted from a meeting between Hamm and Horak in which a condominium dumpster problem was resolved in H.O.D.'s favor. Horak denied making any payments in response to the dumpster problem.

FBI agents who visited Horak in April, 1985 testified that initially Horak denied any wrongdoing. However, once Horak was informed of Hamm's cooperation with the FBI, he changed his story and admitted to paying Fox Lake officials in the hopes of enhancing H.O.D.'s chances of winning the 1981 contract. He admitted that he knew Hamm and Gerretsen were not authorized to receive the money and agreed to the FBI's characterization of the payoffs as a "bribe."

The WM–Ill. controller, Robert Brach, testified that Horak was considered an H.O.D. employee, with influence over its day-to-day affairs, although "technically" he was a WM–Ill. employee. Brach stated that Horak had nothing to do with Waste or its other subsidiaries, with the exception of WM–Ill. Brach also testified that the revenues WM–Ill. earned from its divisions flowed through to Waste, but that H.O.D.'s revenue generally constituted less than 5% of WM–Ill.'s total revenue. He denied that the amount of Horak's bonus depended solely upon the amount of business H.O.D.

generated but rather testified that the bonus was based on H.O.D.'s profits.

On June 10, 1985, the grand jury returned a single-count indictment against Horak charging him with conspiring with Hamm and Gerretsen to violate section 1962(d) of RICO. The RICO enterprise was defined as "HOD Disposal." Horak entered a plea of not guilty and filed a motion to dismiss the indictment, arguing in part that the request contained in the indictment for forfeiture of Waste stock was deficient because the stock was not sufficiently connected to the charged enterprise. Before the motion was decided, the government filed a thirty-eight-count superseding indictment charging Horak with one count of violating section 1962(c) of RICO and thirty-seven counts of mail fraud. The RICO enterprise was defined as "Waste Management, Inc., including its subsidiaries and divisions," with H.O.D. identified as a division of "Waste Management of North America." Horak again filed several pretrial motions, including a motion to dismiss based on a deficient factual nexus between Horak, the enterprise and the pattern of racketeering activity. On February 10, 1986, the government filed a second superseding indictment. The thirty-eight counts remained the same, but the RICO enterprise was defined as "Waste Management, Inc., including its subsidiaries and divisions," with H.O.D. identified as "a division of Waste Management of Illinois, Inc., a wholly-owned subsidiary of Waste Management, Inc."

The jury returned a verdict of guilty on all counts on February 14, 1986. On February 18, the defendant, the government and the district court agreed that the court would hear the forfeiture issue based on briefs and stipulated facts. On March 13, the court sentenced Horak to six months in prison and five years probation and fined him $25,000 for the RICO violation, with a special condition that he make restitution in an undetermined amount on the basis of the mail fraud convictions. (On December 12, 1986, the district court set an $80,000 maximum on this restitution award.) On April 18, 1986, the district court ordered that Horak forfeit his position at H.O.D.,

his salary and bonuses earned from 1981 to 1985 and his interest in any pension or profit-sharing plans connected with H.O.D. The district court also held that Horak's shares in Waste were not subject to forfeiture.

## II. Violation of Section 1962(c)

Horak challenges his section 1962(c) conviction on three grounds.[1] Horak contends that: (1) as an employee of a subsidiary of the charged enterprise, he was not "employed by or associated with" the enterprise; (2) the evidence failed to support a finding that he "conducted the affairs" of the enterprise; and (3) the evidence failed to support a finding that he engaged in a "pattern of racketeering activity." We reject all three contentions and affirm the conviction.

■ First, the evidence manifestly permitted a jury to conclude beyond a reasonable doubt that Horak was employed by or associated with Waste, the charged RICO enterprise. Horak was employed by H.O.D., a division of WM–Ill., which, in turn, is a wholly-owned subsidiary of Waste. H.O.D.'s revenues flowed through to Waste. Horak's day-to-day control of H.O.D. was monitored by WM–Ill. and Waste, particularly Horak's right to contract on H.O.D.'s behalf. Contracts between $300,000 and $1 million required WM–Ill.'s approval; contracts over $1 million required Waste's approval. This evidence is clearly sufficient. *See United States v. Yonan,* 800 F.2d 164, 167 (7th Cir.1986) (defendant "can associate with the enterprise by conducting business with it"), *cert. denied,* — U.S. —, 107 S.Ct. 930, 93 L.Ed.2d 981 (1987); *Haroco v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 402–03 (7th Cir.1984) ("we think it virtually self-evident that a subsidiary acts on behalf of, and thus conducts the affairs of, its parent corporation"), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *United States v. Starnes,* 644 F.2d 673, 679

(7th Cir.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981).

■ Second, the evidence permitted the jury to conclude beyond a reasonable doubt that Horak conducted or participated in the conduct of the affairs of Waste. Essentially Horak argues that even assuming a pattern of racketeering activity were shown, he did not "conduct" the affairs of Waste—the evidence showed only that he conducted the affairs of H.O.D. Horak's argument is misplaced: "conduct" in section 1962(c) does not mean "control" or "manage," and, in any event, section 1962(c) also proscribes "participat[ion], directly or indirectly, in the conduct" of the affairs of the enterprise. To establish the relationship required by 1962(c) between racketeering activity and the affairs of the enterprise, this circuit has held that the government must show, first, that the defendant committed racketeering acts, second, that the defendant's position in or relation with the enterprise facilitated commission of the acts and, third, that the acts had some effect on the enterprise. *United States v. Blackwood,* 768 F.2d 131, 138 (7th Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985); *see also United States v. Cauble,* 706 F.2d 1322, 1333 (5th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984).

Horak's contention that his position as H.O.D. manager does not adequately establish a relationship with the affairs of Waste fails the *Blackwood* test. Horak's position at H.O.D. facilitated his commission of the racketeering acts used to procure the 1981 contract from the Village of Fox Lake. Because H.O.D.'s regular business was garbage collection and a portion of Waste's regular business was garbage collection through its subsidiaries and divisions, Horak, as manager of H.O.D., was acting on Waste's behalf, thus conducting or participating in its affairs. *See Haroco,* 747 F.2d at 402–03; *see also Copperweld Corp. v.*

---

1. The provision pertinent to this case provides:
   (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
18 U.S.C. § 1962(c).

*Independence Tube Corp.*, 467 U.S. 752, 771–74, 104 S.Ct. 2731, 2741–43, 81 L.Ed.2d 628 (1984). Also, Horak's procurement of the 1981 contract through his racketeering activity undoubtedly "had some effect" on H.O.D.'s parent corporation, Waste, because the revenues derived from the contract were channeled up to Waste through WM–Ill. *Blackwood*, 768 F.2d at 138; *see also United States v. Conn*, 769 F.2d 420, 424–25 (7th Cir.1985); *United States v. Ambrose*, 740 F.2d 505, 512 (7th Cir.1984) (such effect does not have to be monetary), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985).

■ Finally, the evidence permitted a conclusion beyond a reasonable doubt that Horak engaged in a "pattern" of racketeering activity. The statutory definition of the pattern element requires at least two acts of racketeering activity within ten years,[2] but two acts do not necessarily fulfill the pattern requirement. *Sedima, S.P. R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985); *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 809–10 (7th Cir.1987); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 974 (7th Cir.1986). The *Sedima* Court concluded that the legislative history of RICO indicates that a confluence of "continuity plus relationship" between or among the predicate acts establishes the requisite pattern. 473 U.S. at 496 n. 14, 105 S.Ct. at 3285. This court recognizes the need to evaluate the facts of each case individually in order to balance properly the two prongs of continuity and relationship. *See Morgan*, 804 F.2d at 975. We have held that to require that predicate acts always occur as parts of separate schemes in order to satisfy the continuity prong would effectively negate the relationship prong and allow defendants who participated in one massive ongoing scheme to escape RICO liability. *See Marshall & Ilsley Trust*, 819 F.2d at 810; *Morgan*, 804 F.2d at 975.

Evidence of three separate bribes was presented to the jury in this case: (1) a $5,000 payment to Hamm regarding the 1981 contract; (2) a $5,000 payment to Gerretsen regarding the 1981 contract; and (3) a $2,000 payment to Hamm involving a dumpster problem at a condominium complex. We conclude that these acts satisfy the "continuity plus relationship" test and permit a conclusion that Horak engaged in a "pattern" of racketeering activity.

Horak does not dispute that he made the payments, but he claims that the two $5,000 payments were a part of a single scheme to win the 1981 contract and that insufficient evidence was introduced to permit the jury to conclude that the $2,000 payment was a bribe. Without the $2,000 payment, according to Horak, the evidence does not permit a finding of "pattern," but rather only an isolated act of bribery to obtain one contract. Horak appropriately directs attention to *Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir.1986), a civil RICO case where this court found no "pattern" established by twelve mail frauds perpetrated over a brief period of several months, relating to a single scheme to defraud a single victim in the sale of a business. However, as was noted in *Lipin*, acts of mail fraud are "perhaps unique" in that a multiplicity of mailings may be no evidence of "the requisite continuity of the underlying fraudulent activity." 803 F.2d at 325 (Cudahy, J., concurring). In the present case, evidence indicated an ongoing relationship built on periodic monthly payments of bribes to officials of Fox Lake. Horak made payments to Gerretsen for several months and then subsequently to Hamm for another period of approximately a year. Recognizing the relevant factors set forth in *Morgan*, we believe that the ongoing bribes of two public officials, even if pertinent only to a single ongoing service contract, may well establish a "pattern" for purposes of section 1962(c).

---

2. The pertinent provision states:

(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

18 U.S.C. § 1961(5).

We believe further that a pattern was established by the additional evidence indicating a second bribe related to discussions of a problem that arose in connection with the garbage service contract. Hamm testified that he met with Horak to discuss potential solutions to the problem and that their meeting resulted in an additional $2,000 payment. Horak contends that insufficient proof existed that the $2,000 was a separate bribe concerning a separate problem. However, it is clear that some two years after establishing the initial scheme to pay $10,000, Horak and Hamm met to negotiate about the garbage services, and Hamm received an additional $2,000. This is sufficient to show continuity and relationship—an ongoing scheme to bribe public officials to obtain and perform a service contract over a several year period.

## III. Forfeiture Under Section 1963(a)(1)

The district court ordered that Horak forfeit, pursuant to section 1963(a)(1), his job with H.O.D., the gross income and bonuses he received from H.O.D. from January, 1981 until his conviction, and all corporate contributions to his pension and profit-sharing plans for the same time period. The version of section 1963(a)(1) in effect at the time of Horak's violation provided:

> (a) Whoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962 ....

18 U.S.C. § 1963(a)(1) (1982) (amended 1984).[3] The district court concluded that Horak's criminal acts "enhanced his position as manager of HOD Disposal. The award of a garbage contract by [Fox Lake] to HOD unquestionably increased HOD's revenue. All of the interests identified by the government depended (in part or whole) upon Horak's performance as manager of HOD." *United States v. Horak*, 633 F.Supp. 190, 200 (N.D.Ill.1986). The court therefore found that the interests were "maintained" by Horak's racketeering activities.

Horak contends that the (a)(1) forfeiture order was improper because the evidence failed to show that he actually maintained all the interests in violation of section 1962 and because the order violated the Eighth Amendment. We agree that the interests (other than the job) ordered forfeited were not adequately proven to be "acquired or maintained in violation of section 1962" and we therefore remand for further forfeiture proceedings. We do not reach the Eighth Amendment claim as it relates to section (a)(1).[4]

The forfeiture provisions of section 1963(a) are the first revival in modern times of forfeiture as a criminal sanction against a defendant, i.e. forfeiture as applied *in personam*. *See United States v. Huber*, 603 F.2d 387, 396 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Congress emphasized that new remedies were needed to attack organized crime and racketeering, *see* S.Rep. No. 617, 91st Cong., 1st Sess. 76 (1969), and, to accompany the statutory

---

**3.** Congress amended section (a)(1) slightly in 1984 but not in any way that affects the analysis here.

**4.** We discuss below some related Eighth Amendment implications of forfeiture orders under section (a)(2), but note here only that we think it highly unlikely that criminal forfeiture orders properly entered under (a)(1) reaching proceeds of racketeering activity could constitute cruel and unusual punishment violating the Eighth Amendment. *Cf. Solem v. Helm*, 463 U.S. 277, 289–90, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983); *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980).

One point that Horak presses on appeal is that the district court misapplied section (a)(1) when the court concluded that the forfeited interests were maintained *by* violating RICO rather than maintained *in* violation of RICO. We do not believe that this fine semantic distinction, based on dictionary definitions of "by" and "in," can carry so much weight as Horak demands of it. Nor was this argument supported by Horak's counsel when he appeared in district court. Horak's counsel explained that the terms "acquired or maintained" simply meant that "they got it or they kept it *by* the pattern of racketeering activity." Tr. at 18–19 (Feb. 18, 1986) (emphasis supplied). Thus, we believe an analysis of these contentions on appeal is unwarranted.

scheme, Congress enacted a provision very rare in criminal law: "The provisions of this title shall be liberally construed to effectuate its remedial purpose." Pub.L. 91–452, § 904(a), 84 Stat. 947; *cf.* 18 U.S.C. § 3731 (defining the right of the United States to appeal in criminal cases and directing that "[t]he provisions of this section shall be liberally construed to effectuate its purposes"). In light of these facts, section (a)(1) has been read broadly to mandate forfeiture of every interest, including proceeds, that a defendant acquired or maintained in violation of section 1962. *See Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). Thus, presumably, section (a)(1) requires that a convicted defendant forfeit all "ill-gotten gains" or their proceeds.

The government contended and the district court agreed that the interests ordered forfeited all were dependent, in part or in whole, upon Horak's performance as operating manager of H.O.D., a position "enhanced" by Horak's racketeering activity. However, we believe that viewing Horak's job, salary, bonuses and corporate contributions to his profit-sharing and pension plans as an indivisible unit subject to total forfeiture under section (a)(1) as an interest maintained in violation of RICO, was incorrect. We believe that the various interests must be viewed separately, and thus we affirm the forfeiture of Horak's job but remand for further consideration the forfeiture of Horak's salary, bonuses and corporate profit-sharing and pension plans.

■ The forfeiture of Horak's job is consistent with numerous cases that have interpreted section 1963(a). *See e.g., United States v. Kravitz,* 738 F.2d 102, 103 (3d Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985); *United States v. Rubin,* 559 F.2d 975, 992 (5th Cir.1977), *vacated on other grounds,* 439 U.S. 810, 99 S.Ct. 67, 58 L.Ed.2d 102 (1978). The rationale behind these job forfeiture orders seems to be that section (a)(1) demands that the defendant be separated from any employment position that afforded him the opportunity to engage in the racketeering activity for which he was convicted. *See Kravitz,* 738 F.2d at 103; *Rubin,* 559 F.2d at 992. Significantly, none of these decisions analyzed the potential forfeiture of defendant's position of employment as Horak suggests: namely, was it shown that the defendant would have lost his position if he had not engaged in the racketeering activity? Rather, in light of the Congressional intent, these courts have construed section (a)(1) to authorize the forfeiture of any employment position that allowed defendant the opportunity to perform the racketeering acts. *See Kravitz,* 738 F.2d at 103; *Rubin,* 559 F.2d at 992. We agree that such a forfeiture order is consistent with section (a)(1). We do not decide here the scope and duration of job forfeiture permissible in such an order. In the present circumstances, the order is proper under (a)(1).

■ However, it is not clear to us that Horak should be required to forfeit the *entirety* of his salary, bonuses and corporate profit-sharing and pension plans from 1981 to the present. The district court concluded that these forfeited interests all "depended (in part or whole)" on Horak's performance as H.O.D. manager, which performance was "enhanced" by his criminal activity that violated section 1962. Thus, according to this analysis, any interest that partially depends on, or is in some measure caused by, the criminal activity must be wholly forfeited. We believe that this construction of section (a)(1) is overly expansive.

The Supreme Court did construe section (a)(1) rather broadly in *Russello,* concluding that a right to profits or proceeds can be an "interest" subject to forfeiture. 464 U.S. at 22, 104 S.Ct. at 300. But the Court did not face a question whether the interest subject to forfeiture was in fact "acquired or maintained" in violation of section 1962. *Id.* at 21, 104 S.Ct. at 299 ("There is no question that petitioner Russello acquired the insurance proceeds at issue in violation of § 1962(c). . . ."). Courts agree that actual "ill-gotten gains" or "booty" from racketeering activity—such as amounts extorted from victims and profits or proceeds of

arson or drug conspiracies—are forfeitable interests. *E.g., United States v. Ginsburg,* 773 F.2d 798, 801 (7th Cir.1985) (en banc), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986). And it is clear that no "tracing" need be undertaken once evidence establishes such an interest. *E.g., United States v. Conner,* 752 F.2d 566, 576 (11th Cir.), *cert. denied,* 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985). Section (a)(1) commands forfeiture as an *in personam* penalty. Therefore, once an "interest" is acquired or maintained, the penalty attaches, or vests, and a subsequent forfeiture order need not trace the path of the affected interest. *See Ginsburg,* 773 F.2d at 800.

Undoubtedly, section 1963 was intended to be a powerful tool against what was perceived as a special criminal threat, and we are certainly directed to construe its provisions liberally. Nonetheless, we believe close attention is due to the structure of the forfeiture provisions and particularly to the *separate* modes of operation of subsections (a)(1) and (a)(2). Section (a)(1) focuses on the *racketeering activity* and divests the convicted defendant of all interests "acquired or maintained" by that activity. It is apparently irrelevant whether such interests are part of the charged enterprise. Section (a)(2), on the other hand, as discussed below, focuses on the *enterprise,* not the specific racketeering activity, and divests the convicted defendant of all interests in the enterprise. It would therefore seem irrelevant (at least in terms of the structure of the statute) whether (a)(2) interests were directly related to the racketeering activity of which the defendant was convicted.

In view of the focus of these respective sections, a remand is necessary for the district court to consider whether Horak's salary, bonuses and profit-sharing and pension plans were in fact "acquired or maintained" in violation of section 1962. We do not believe that it is sufficient under section (a)(1) for the court to determine that Horak's racketeering activities "enhanced" his performance as H.O.D. manager, thus affecting the enumerated interests. Instead, on remand, the court must determine what portion of Horak's interests would not have been acquired or maintained "but for" his racketeering activities. That is, in order to win a forfeiture order, the government must show on remand that Horak's racketeering activities were a cause in fact of the acquisition or maintenance of these interests or some portion of them. For example, if the government can prove that Horak would have been fired in 1981 but for his landing the Fox Lake contract (which he accomplished by violating section 1962), the court should order forfeiture of his entire salary thereafter and such other emoluments of his employment as would have been lost by the firing. But, if the government can prove only that Horak received a bonus for his landing of the Fox Lake contract, then only that bonus is forfeitable under (a)(1). Presumably, the pension and profit-sharing issues are also subject to a "but-for" test. When and under what circumstances were these benefits earned?

Two additional points are relevant with respect to remand under section (a)(1). First, at oral argument counsel for the government answered questions about the relevant burden of proof by agreeing with Horak that the government must prove the relevant facts beyond a reasonable doubt to win forfeiture under section 1963. It seems, therefore, that the government has agreed that on remand it must establish the necessary causal connections under section (a)(1) beyond a reasonable doubt. *See United States v. Roberts,* 749 F.2d 404, 409 (7th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1770, 84 L.Ed.2d 830 (1985); *see also United States v. McKeithen,* 822 F.2d 310 (2d Cir.1987) (construing 21 U.S.C. § 848(a)(2)(B)); *Briggs v. Procunier,* 764 F.2d 368, 371 (5th Cir.1985) (construing habitual offender statute). *But see United States v. Sandini,* 816 F.2d 869, 874–76 (3d Cir.1987) (construing 21 U.S.C. §§ 848(a), 853(d)). *See generally Bullington v. Missouri,* 451 U.S. 430, 437–46, 101 S.Ct. 1852, 1857–62, 68 L.Ed.2d 270 (1981) (comparing guilt and sentencing phases in capital case with sentencing phase in noncapital case,

recognizing role of standards of proof in each).

Second, we note that our vacatur of the forfeiture ordered under section (a)(1) does not preclude the conclusion on remand that certain of the interests at issue may be forfeitable under section (a)(2). The government makes this contention on appeal and we believe there may be some merit to the argument. However, we believe that this issue should be addressed in the first instance by the district court on remand.

We therefore affirm in part and vacate in part the section (a)(1) forfeiture order and remand for further proceedings consistent with this opinion. We do not reach Horak's contention that the section (a)(1) forfeiture order violates his rights under the Eighth Amendment.

### IV. Cross–Appeal—Denial of Forfeiture Under Section 1963(a)(2)

The government cross-appeals the district court's denial of forfeiture pursuant to section 1963(a)(2) [5] of Horak's stockholdings in Waste. At the outset there is a serious question of our jurisdiction to hear an appeal by the government in these circumstances.

The government asserts that we have jurisdiction based on either of two grounds: first, pursuant to section 3731 of the criminal code, 18 U.S.C. § 3731,[6] which defines certain rights of appeal in criminal cases, and second, pursuant to section 1651 of the civil code, 28 U.S.C. § 1651(a),[7] which authorizes the issuance of writs of mandamus

to the district court. Horak argues that jurisdiction of the appeal is barred by double jeopardy and, in the alternative, is not available either under section 3731 or under section 1651. We conclude that, although the double jeopardy clause in and of itself does not bar the government's appeal, jurisdiction does not lie under section 3731 and we decline to invoke our discretionary power to issue a writ of mandamus.

It is well settled that the government has no authority to take an appeal in a criminal case without an express grant of power by Congress. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568, 97 S.Ct. 1349, 1352, 51 L.Ed.2d 642 (1977); *United States v. Wilson*, 420 U.S. 332, 336, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975); *United States v. Sanges*, 144 U.S. 310, 318, 12 S.Ct. 609, 612, 36 L.Ed. 445 (1892). The government in the present case contends that section 3731 does expressly grant authority to appeal the district court's denial of section (a)(2) forfeiture.

The language of the statute itself, however, seems to contradict the government's position. The applicable paragraph of section 3731 provides that the government can appeal in two circumstances: 1) upon the dismissal of an indictment or information or a count thereof, and 2) upon the granting of a new trial as to one or more counts after verdict or judgment. The government urges that the district court's denial of forfeiture of Horak's stock under section 1963(a)(2) is in effect a partial dismissal of an indictment. The government of-

---

**5.** The provision pertinent to this case stated:

(a) Whoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than twenty years, or both, and shall forfeit to the United States ... (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

18 U.S.C. § 1963(a) (1982) (amended 1984).

**6.** Section 3731 states in pertinent part:

In a criminal case an appeal by the United States shall lie to a court of appeals from a

decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

18 U.S.C. § 3731.

**7.** Section 1651(a) establishes that federal courts have the power to issue writs of mandamus:

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a).

fers no authority for its assertion that an order denying one portion of a forfeiture request following a forfeiture hearing is, for purposes of appeal under section 3731, the functional equivalent of a dismissal of the corresponding count of the indictment.

We acknowledge that the Ninth Circuit has held that it had jurisdiction, under section 3731, to review a district court's dismissal of a portion of a count demanding forfeiture of contract income pursuant to section 1963(a)(1). *United States v. Marubeni*, 611 F.2d 763, 764–65 (9th Cir.1980). The trial court ruling that was affirmed there, however, was made before trial purely on grounds of legal insufficiency. The district court ruling was thus obviously closer in substance and form to the dismissal of an indictment than Judge Norgle's determination here. The Second Circuit similarly has allowed a government appeal from the dismissal of a portion of an indictment, but only when "the trial court's ruling '... strike[s] from the case an independent basis of liability.'" *United States v. Tom*, 787 F.2d 65, 70 (2d Cir.1986) (quoting *United States v. Margiotta*, 662 F.2d 131, 141 (2d Cir.1981)). In the present case, the denial of part of a forfeiture request is in our view not a determination of a basis of liability but only a finding on the availability of a penalty.

Even if the government's request for stock forfeiture here involved in effect one portion of one count of an indictment, the court's order was not a "dismissal" of it. Of course, the mere label attached to a trial court order cannot determine its appealability under section 3731. *United States v. Tranowski*, 702 F.2d 668, 670 (7th Cir. 1983), *cert. denied*, 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 884 (1984). In *Tranowski*, this court allowed the government to appeal the district court's denial of a motion to retry the defendant following reversal of his conviction. We reasoned that such an appeal does not offend the double jeopardy clause and thus is permitted under section 3731, because the motion "preceded any trial on remand." *Id.* We noted also that a "judgment ... 'tantamount to a dismissal of an indictment,' [is] appealable under section 3731, though not labeled a 'dismissal.'" *Id.* (quoting *United States v. Esposito*, 492 F.2d 6, 10 (7th Cir.1973), *cert. denied*, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 760 (1974)).

An analysis of the course of proceedings here reveals that the district court's order denying forfeiture of the Waste stock is not analogous to a dismissal of an indictment. In the present case, the government alleged, in a portion of one count, that Horak's stock in Waste was subject to forfeiture pursuant to 1963(a)(2). Horak moved to dismiss the indictment on various theories, one of which was that the government had failed to state a basis for forfeiture of the stock. In its pre-trial ruling, the court found that, although the government alleged that the Waste stock was subject to forfeiture because it afforded Horak a source of influence over the corporation, the government did not explain "the kind or extent of [Horak's] influence." The court reserved this issue.

Following trial on the merits, the jury returned a guilty verdict. In a subsequent proceeding, the trial judge considered both oral argument and briefs on the government's request for forfeiture. The government argued that the stock's voting characteristic afforded Horak a source of influence over the enterprise. The court found that this alone was insufficient and held that the government had failed to prove a basis for forfeiture. The district court's order at the post-trial forfeiture proceeding was based on its finding of fact that Horak had no influence over the Waste enterprise. This is not tantamount to the dismissal of an indictment, or a portion of a count of an indictment, and does not conform to the language of section 3731.[8]

---

**8.** Horak made the following distinction between the present case and dismissals of indictments:

> The cases cited by the government involve instances where the defendant was convicted or where the government was precluded from presenting its case. Here, in contrast, the

> government lost its case as to forfeiture of Mr. Horak's stock and now asks this court to reconsider the resolution in Horak's favor. Unlike dismissal of an indictment, where the government is denied the opportunity to prove its case, the government in the present

The government contends in the alternative, however, that the RICO forfeiture ruling is essentially a sentencing order, appealable under section 3731 so long as it does not offend the double jeopardy clause. Horak responds in two ways. First, the double jeopardy clause precludes appeal of the forfeiture order, which amounts to an "acquittal" as to forfeiture of the stock. Alternatively, section 3731 does not authorize appeals from sentences.

We agree that the forfeiture order is part of the determination of Horak's sentence rather than a finding of his guilt or innocence. *United States v. Ginsburg*, 773 F.2d 798, 801 (7th Cir.1985) (en banc) ("RICO forfeiture is a punishment imposed on a guilty defendant."), *cert. denied*, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); *see also United States v. Godoy*, 678 F.2d 84, 87–88 (9th Cir.1982), *cert. denied*, 464 U.S. 959, 104 S.Ct. 390, 78 L.Ed.2d 334 (1983).

Although the Supreme Court has not ruled whether an appeal of a forfeiture order would offend constitutional guarantees against double jeopardy, we believe, based on *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), that such an appeal would survive double jeopardy attack. In *DiFrancesco*, the Court held that the government's statutory right to appeal from an imposition of a sentence under the "dangerous special offender" provisions, 18 U.S.C. §§ 3575, 3576, did not involve double jeopardy. The Court rejected the argument that "the imposition of the sentence is an 'implied acquittal' of any greater sentence." *Id.* at 133, 101 S.Ct. at 435. The Court emphasized that if "a Government Appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended." *Id.* at 132, 101 S.Ct. at 434 (quoting *Martin Linen Supply Co.*, 430

U.S. at 569–70, 97 S.Ct. at 1353–54). Although the forfeiture proceeding here, unlike most sentencing proceedings, involves formal determinations of fact, we do not believe that a remand would necessarily require the district court to engage in further fact-finding. Although there are strong arguments for applying the double jeopardy bar to certain kinds of sentencing proceedings,[9] *see DiFrancesco*, 449 U.S. at 143, 101 S.Ct. at 440 (Brennan, J., dissenting); *id.* at 152, 101 S.Ct. at 445 (Stevens, J., dissenting), these views have not prevailed.

But, even if the double jeopardy clause alone does not preclude the government's appeal, the application of section 3731 to this forfeiture order is in question. We reject the government's reliance on sweeping language of the Supreme Court that section 3731 authorizes "appeals whenever constitutionally permissible." *Wilson*, 420 U.S. at 338–39, 95 S.Ct. at 1019; *see also Martin Linen Supply Co.*, 430 U.S. at 568, 97 S.Ct. at 1353. Although the *Wilson* Court recited in some detail the legislative history of section 3731 as support for its conclusions, the extremely broad reading of the statute urged by the government was unnecessary to the *Wilson* decision. For in *Wilson* the government had appealed a district court order actually dismissing an indictment. Thus, section 3731's requirements were squarely met and the government's appeal was clearly authorized unless it violated Wilson's rights under the double jeopardy clause.

We, of course, carefully weigh the *Wilson* court's explication of the legislative history and its statement that section 3731 was intended to grant authority to appeal all decisions that "terminated a prosecution" up to the limits of double jeopardy. 420 U.S. at 338, 95 S.Ct. at 1019. But

---

case was given that opportunity but failed to do so.
Reply Brief for Defendant at 38–39.

9. Horak analogizes the instant RICO forfeiture proceeding to a capital sentencing proceeding, which the Supreme Court has found to resemble more closely a trial on guilt and innocence than a noncapital sentencing proceeding. *See, e.g., Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct.

1852, 68 L.Ed.2d 270 (1981). The *Bullington* Court held that the double jeopardy clause prohibited the state, on retrial, from seeking the death penalty a second time. *Id.* at 446, 101 S.Ct. at 1862. In light of *DiFrancesco*, we believe that the rationale of *Bullington* cannot be extended from the death penalty to problems of RICO forfeiture.

denying a forfeiture request is quite different from terminating a prosecution.

Courts faced with government appeals in criminal cases are struggling to reconcile the specific language of section 3731 with the broad language of the Supreme Court. With respect to the appealability of sentencing orders under section 3731, the courts of appeals are divided. Some circuits, relying on *Wilson* and finding no double jeopardy bar, are reviewing such orders. *See, e.g., United States v. Edmonson,* 792 F.2d 1492, 1496 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987); *United States v. Wright Contracting Co.,* 728 F.2d 648, 650 (4th Cir.1984); *United States v. Prescon Corp.,* 695 F.2d 1236, 1240–41 (10th Cir. 1982); *Godoy,* 678 F.2d at 87–88.

We, however, believe that other circuits that have taken a more restrictive view of the appealability of sentencing orders under section 3731 have a more persuasive position. For example, in *United States v. Ferri,* 686 F.2d 147, 150–51 (3d Cir.1982), *cert. denied,* 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983), the court found that section 3731 did not authorize an appeal from a district court order reducing a sentence because such an order is not mentioned specifically by the statute. More recently the same court, in *Government of the Virgin Islands v. Douglas,* 812 F.2d 822, 829 (3d Cir.1987), relied on *Ferri* to conclude that it had no jurisdiction under section 3731 to review a district court's failure to impose two sentences consecutively.

The Fifth Circuit, in *United States v. Denson,* 588 F.2d 1112, 1125–26 (5th Cir.),

*aff'd in part and modified in part,* 603 F.2d 1143, 1145 (1979) (en banc), held that the government could not rely on section 3731 as authority to take a direct appeal from an allegedly illegal sentence. The *Denson* court, comparing the words of the statute with those of the *Wilson* Court, reasoned:

> Section 3731 cannot be construed to authorize a government appeal from any and every District Court order. To so construe Section 3731 would do violence to Congress' express intention to carefully identify and define the situations in which the Government might appeal. We agree with counsel for the Government, who quite candidly admitted at oral argument that these judgments are in no material way even related to the types of orders set out in Section 3731.

588 F.2d at 1125–26. The Eleventh Circuit subsequently adopted the *Denson* decision. *United States v. Cannon,* 778 F.2d 747, 748 (11th Cir.1985) ("appeal is [not] the appropriate procedure for correction of an illegal sentence"); *United States v. Dean,* 752 F.2d 535, 540 n. 12 (11th Cir.1985) ("*Denson* forecloses any possible contention that 18 U.S.C. § 3731 authorizes a governmental appeal in the instant case."), *cert. denied,* —— U.S. ——, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986).

The Eighth Circuit, although allowing appeal of a sentence reduction pursuant to section 1291, explicitly refused to find such authority under section 3731. *United States v. DeMier,* 671 F.2d 1200, 1204 n. 12 (8th Cir.1982) ("We do not read § 3731 to encompass the instant appeal, and do not rely on it for our appellate jurisdiction.").[10]

---

**10.** We do not accept the rationale of *DeMier* that section 1291 provides jurisdiction for government appeals of sentencing orders. That provision states in pertinent part:

> The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court.

28 U.S.C. § 1291. Section 1291 establishes statutory authority in *courts,* such as this, to hear appeals; the statute does not purport to grant to the government the power to *bring* all appeals without limitation. *See DiBella v. United States,*

369 U.S. 121, 130, 82 S.Ct. 654, 659, 7 L.Ed.2d 614 (1962) (section 1291 does not authorize any right of appeal in criminal cases). This is a point emphasized by Justice Stevens in *Arizona v. Manypenny,* 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981): "There is a distinction between a court's power to accept an appeal and an executive's power to prosecute an appeal." *Id.* at 250, 101 S.Ct. at 1669 (Stevens, J., concurring). Nothing in section 1291 grants the executive the power to appeal all (or for that matter any) final orders in criminal cases. We thus believe that the government does not have the authority, under either section 3731 or under

Finally, we note that at the time Horak was sentenced, section 3576 of the Criminal Code explicitly allowed the government to appeal sentences imposed under the dangerous special offenders provision, 18 U.S. C. § 3575.[11] We believe that the combined presence of sections 3576 and 3731, both enacted by Congress in 1970, support our conclusion that government appeals of sentencing orders are not authorized under section 3731. Both provisions describe in careful detail the circumstances under which the government may seek review of a judgment in a criminal case. Neither provision grants to the United States a general right to appeal any and all sentencing orders. Moreover, if Congress had intended section 3731 to authorize appeals from sentencing decisions, it would not have been necessary for it to expressly grant the right to appeal a single type of sentence—that imposed upon a dangerous special offender—under section 3576.[12]

▮ Therefore, we agree with other courts that have concluded that Congress in enacting section 3731 did not intend to authorize government appeals of all final sentencing decisions where there was no double jeopardy bar. Among the reasons we have cited for this conclusion, the particular language of the statute is most compelling. We therefore conclude that the order denying the stock forfeiture request here may not be appealed by the government.

At this point, we must consider our power to issue a writ of mandamus to the district court. We have described the writ of mandamus as "an extraordinary remedy reserved for extreme situations." *Rohrer, Hibler & Replogle, Inc. v. Perkins*, 728

F.2d 860, 863 (7th Cir.), *cert. denied,* 469 U.S. 890, 105 S.Ct. 265, 83 L.Ed.2d 201 (1984); *J.H. Cohn & Co. v. American Appraisal Assocs.*, 628 F.2d 994, 997 (7th Cir. 1980); *see also United States v. Dorfman*, 690 F.2d 1217, 1224 (7th Cir.1982) ("This Court has repeatedly emphasized its reluctance to resort to the extraordinary remedy of mandamus, having reserved it for the most exceptional cases."). The writ traditionally is available only "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *see Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967); *Oswald v. McGarr*, 620 F.2d 1190, 1195 (7th Cir.1980).

The government contends that the district court exceeded its authority by finding facts that required an order of forfeiture of the Waste stock pursuant to section (a)(2), but in declining, in spite of its finding, to order forfeiture. Horak argues that we should not issue the writ because we would thereby circumvent the limitations of section 3731 and because even an erroneously reasoned district court order should stand if any theory of law can justify it.

Presumably, we have *jurisdiction* under section 1651 to issue the writ. *See Ferri,* 686 F.2d at 152. However, we are mindful of the demanding standard that must be met before exercising that jurisdiction:

[I]t is clear that only exceptional circumstances amounting to a judicial "usurpation of power" will justify the invocation of this extraordinary remedy. ... And

---

section 1291, to take an appeal from the district court's forfeiture decision here.

**11.** The portion of section 3576 authorizing government appeal states:

With respect to the imposition, correction, or reduction of a sentence after proceedings under section 3575 of this chapter, a review of the sentence on the record of the sentencing court may be taken by the defendant or the United States to the court of appeals. 18 U.S.C. § 3576 (repeal effective Nov. 1, 1987).

**12.** We also note here that Congress has subsequently enacted a specific provision authorizing

the government to appeal and seek review of a final sentence. Pub. L. No. 98–473, § 213(a), 98 Stat. 1837, 2011 (1984) (effective Nov. 1, 1987, codified at 18 U.S.C. § 3742). It is hazardous to give weight to subsequent enactments of Congress, but nothing in the legislative history of the new statute suggests Congress intended to duplicate authority already granted in § 3731. *Cf. Government of the Virgin Islands*, 812 F.2d at 831 n. 9 (section 3742 "suggests that Congress understood the preexisting law to provide that such [sentencing] orders were not appealable").

the party seeking mandamus has "the burden of showing that its right to issuance of the writ is 'clear and indisputable.' "

*Will*, 389 U.S. at 95–96, 88 S.Ct. at 273–74 (citations omitted). Of course, a demanding standard is not an impossible standard. *See, e.g., In re Moore*, 776 F.2d 136, 139–40 (7th Cir.1985) (issuing writ of mandamus directing district court to comply with mandatory rule of criminal procedure); *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 461 (7th Cir.1985) (issuing writ of mandamus directing district judge to recuse himself).

Several courts have concluded that a writ of mandamus properly could issue to direct a district court to resentence a defendant or to order forfeiture. *See, e.g., Cannon*, 778 F.2d at 748; *Dean*, 752 F.2d at 545–46; *Ferri*, 686 F.2d at 152–54; *United States v. L'Hoste*, 609 F.2d 796, 809–13 (5th Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980); *Denson*, 603 F.2d at 1145; *United States v. Busic*, 592 F.2d 13, 26 n. 11 (2d Cir.1978). The font of these holdings seems to be *Ex Parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916), where the Supreme Court held that the authority to establish punishment for a crime was a legislative power, and that, in circumstances where a federal court refused to impose a sentence mandated by law, mandamus would issue to compel the court to exercise its discretion within the bounds of the law. Of additional relevance is the holding in *Denson*, where the court concluded that, if, for example, a district court imposed an illegal sentence, "the aggrieved party should be granted the writ [of mandamus] almost as a matter of right." 603 F.2d at 1147; *see also Dean*, 752 F.2d at 545; *L'Hoste*, 609 F.2d at 812 (construing 18 U.S.C. § 1963). *But see Douglas*, 812 F.2d at 832 (denying writ because district court did not violate "clear and indisputable" legal duty).

■ We recognize that mandamus should not issue as a substitute for appeal or as an avenue to circumvent clear policies limiting appellate review. *See Will*, 389 U.S. at 96–97. In the context of government appeals in criminal cases, however,

these concerns seem to have focused on attempts to procure the writ with respect to interlocutory decisions. In the present case, of course, we do not have an attempt to obtain "piecemeal review" during a criminal prosecution. We believe, therefore, that we must consider whether the government has shown its clear and indisputable right to issuance of a writ to compel the district court under section (a)(2) to order forfeiture of Horak's stock in Waste.

■ In evaluating whether a writ should issue, two aspects of the district court's denial of (a)(2) forfeiture require attention. First, we must consider whether the district court's construction of section (a)(2) is proper, or at least not indisputably improper. Second, we must consider whether any other grounds may justify the decision not to order forfeiture of the Waste stock. We believe that in the circumstances of this case issuance of the writ is inappropriate.

The district court considered the language of section (a)(2) to be ambiguous and, after evaluating the intent of Congress, the policies inherent in the statute, the rule of lenity and the requirements of the Eighth Amendment, the court concluded:

[I]n order for the government to prevail on an (a)(2) forfeiture, it must show that each of the four categories of assets have [sic] some connection (a nexus) with the underlying racketeering activity of which a Defendant is convicted ... [by proving] that the relevant category of property provided the Defendant with a source of influence over an enterprise and [that] Defendant has a property interest in that same enterprise.

*Horak*, 633 F.Supp. at 199–200. Although the court found as a fact that Horak's stock in Waste constituted " 'interests in' and 'securities of' the enterprise charged in the indictment," Mem. op. at 4 (Sept. 19, 1986), it denied the (a)(2) forfeiture because no evidence showed that Horak's stock "afforded him any influence over the operation of" Waste, 633 F.Supp. at 200.

The government contends that (a)(2) forfeiture was mandatory once the court determined that Horak's stock constituted an

interest in or security of an enterprise. Mandamus should issue, according to the government, because the court improperly refused to exercise authority that it had a duty to exercise. Although we think the district court's interpretation of section (a)(2) was probably incorrect, we cannot conclude that it is clear and indisputable that the court erred in declining to order forfeiture of the Waste stock.

The government advances several reasons for finding that the district court's reading of section (a)(2) is erroneous. First, the language of section (a)(2) is not ambiguous if we give substantial significance to the placement of commas: the then applicable version of section (a)(2) required forfeiture of a convicted defendant's "interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, an enterprise." The fact that Congress placed no comma after "contractual right" and did place a comma after "influence over" is an indication that the phrase "of any kind affording a source of influence over" modifies only the fourth category listed, namely "property or contractual right." As a matter of grammatical logic the government's position is strong. But courts need not let grammar or punctuation be the end-all of issues of statutory construction. *See Barret v. Van Pelt*, 268 U.S. 85, 91, 45 S.Ct. 437, 439, 69 L.Ed. 857 (1925). The district court considered the government's argument, but reasoned that the limiting phrase more logically should modify all four of the broadly defined categories of (a)(2) than only the last category. 633 F.Supp. at 198. Because the court was able to cite conflicting authorities construing section (a)(2), we

find that the government's position is, although persuasive, not "indisputable."

The government also contends that a subsequent amendment of (a)(2) makes clear that the district court misinterpreted (a)(2).[13] The district court appropriately cited authority holding that in general the views of a subsequent Congress on prior legislation are not to be given great weight. *See Russello,* 464 U.S. at 26, 104 S.Ct. at 302. Nevertheless, the government properly suggests that when an amendment merely affirms or clarifies the preexisting meaning of a provision, such an amendment is indeed relevant to questions of statutory interpretation. *See Ginsburg,* 773 F.2d at 803; *Brown v. Marquette Savings & Loan Ass'n,* 686 F.2d 608, 615 (7th Cir.1982). Again, we find the government's argument persuasive though not "indisputable."

The government also argues that the structure and purpose of section (a)(2) and RICO require that the court treat (a)(2) forfeiture as mandatory. We acknowledge the far-reaching aims of RICO in general and forfeiture provisions in particular, but we cannot agree that these aims could justify a writ of mandamus ordering the court to reinterpret section (a)(2) in harmony with such general principles.

Thus, as to the first area of our inquiry, we find the government's construction of section (a)(2) certainly persuasive although not sufficiently "indisputable" to demand a writ of mandamus. For, in any event, if Horak were ordered to forfeit his stock in Waste, constitutional questions could be implicated. These issues are of sufficient

---

**13.** Section 1963 was revised in 1984 as part of the Comprehensive Crime Control Act. The text now reads:

   (a) Whoever violates any provision of section 1962 of this chapter shall be fined not more than $25,000 or imprisoned not more than 20 years, or both, and shall forfeit to the United States, irrespective of any provision of State law—
      (1) any interest the person has acquired or maintained in violation of section 1962;
      (2) any—
      (A) interest in;
      (B) security of;
      (C) claim against; or
      (D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of in violation of section 1962; and
      (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.
18 U.S.C. § 1963.

weight in themselves to convince us that mandamus should not issue here.

An order of forfeiture consistent with the government's interpretation of section (a)(2) would reach stock worth approximately $8 million. This forfeiture presumably would comprise punishment for acts of racketeering that won the enterprise a contract worth $700,000 and cost the enterprise (or Horak) some $12,000 in bribe payments. The fact that the stock was an interest in the enterprise may have resulted from the government's amendment of the charges contained in the second superseding indictment.[14] It is at least arguable that disparities in monetary value or prosecutorial caprice in the choice of the enterprise could, in some circumstances, implicate the Eighth Amendment. We are not insensitive to the concern that vast prosecutorial discretion in combination with potentially enormous forfeiture orders might in some circumstances threaten Eighth Amendment rights. *See United States v. Littlefield,* 821 F.2d 1365, 1368 (9th Cir.1987) (forfeiture ordered pursuant to 21 U.S.C. § 853(a)(2) can implicate Eighth Amendment); *United States v. Busher,* 817 F.2d 1409, 1413–16 (9th Cir. 1987) (remand for forfeiture rehearing in light of Eighth Amendment concerns); *United States v. Walsh,* 700 F.2d 846, 847 (2d Cir.) (forfeiture reaches all assets of the enterprise except as limited by the Eighth Amendment), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983).

The court in *Busher* remanded a forfeiture order entered pursuant to section (a)(2) and directed the district court on remand to "make a determination, based upon appropriate findings, that the interest ordered forfeited is not so grossly disproportionate to the offense committed as to violate the eighth amendment." 817 F.2d at 1415. The court suggested several factors that should affect an analysis embodying what are admittedly "fluid concepts." *Id.; see also Littlefield,* 821 F.2d at 1368. The *Busher* case would seem to construe section (a)(2) to require forfeiture

of a defendant's entire interest in the enterprise except where the Eighth Amendment prohibits it. *See* 817 F.2d at 1415 ("the district court must avoid unconstitutional results by fashioning forfeiture orders that stay within constitutional bounds"). Thus, under this interpretation, the mandatory language of section (a)(2) is intended to reach as far as the Eighth Amendment allows. Such a construction of section (a)(2), which is certainly defensible, gives us pause.

Even if the Eighth Amendment concerns were not present, and the government had demonstrated a clear and indisputable right to mandamus, "it is important to remember that issuance of the writ is in large part a matter of discretion with the court to which the petition is addressed." *Kerr v. United States Dist. Court,* 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976); *Schlagenhauf v. Holder,* 379 U.S. 104, 112 n. 8, 85 S.Ct. 234, 239 n. 8, 13 L.Ed.2d 152 (1964); *Parr v. United States,* 351 U.S. 513, 520, 76 S.Ct. 912, 917, 100 L.Ed. 1377 (1956); *see also Whitehouse v. Illinois Cent. R.R. Co.,* 349 U.S. 366, 373, 75 S.Ct. 845, 850, 99 L.Ed. 1155 (1955) ("mandamus is itself governed by equitable considerations and is to be granted only in the exercise of sound discretion"); *In re Halkin,* 598 F.2d 176, 198 (D.C.Cir.1979) (quoting *Ex Parte Peru,* 318 U.S. 578, 584, 63 S.Ct. 793, 797, 87 L.Ed. 1014 (1943)) ("Although mandamus is a common law writ, it may, 'like equitable remedies, ... be granted or withheld in the sound discretion of the Court ....'"). In accordance with such discretion, "a court can decide not to issue a writ even though such a writ, if granted, would be proper." *Citibank, N.A. v. Fullam,* 580 F.2d 82, 90 (3d Cir.1978).

We exercise our discretion to decline to issue a writ because we find that Judge Norgle's interpretation of section 1963(a)(2) does not amount to a judicial "usurpation of power" so as to justify mandamus. *See DeBeers Consol. Mines, Ltd. v. United States,* 325 U.S. 212, 217, 65 S.Ct. 1130,

---

**14.** We do not decide the question whether stock in Waste would constitute an "interest in" or a

"security of" WM–Ill.

1133, 89 L.Ed. 1566 (1945). The district court order did not, for example, violate a mandate of an appellate court, *United States v. District Court*, 334 U.S. 258, 263–64, 68 S.Ct. 1035, 1037–38, 92 L.Ed. 1351 (1948), or demonstrate persistent disregard of federal rules, *La Buy v. Howes Leather Co.*, 352 U.S. 249, 256–57, 77 S.Ct. 309, 313–14, 1 L.Ed.2d 290 (1957). The government nonetheless contends that the district court did exceed its jurisdiction by refusing to enter the mandatory forfeiture order. The Supreme Court, however, observed that

> jurisdiction need not run the gauntlet of reversible errors. The ruling on a question of law decisive of the issue ... was made in the course of the exercise of the court's jurisdiction to decide issues properly brought before it. Its decision against petitioner—which we do not pass upon—involved no abuse of judicial power....

*Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 382, 74 S.Ct. 145, 147, 98 L.Ed. 106 (1953) (citations omitted). The Court further warned against enlarging the writ of mandamus "to actually control the decision of the trial court." *Id.* at 383, 74 S.Ct. at 148.

We find Judge Norgle's reading of the forfeiture provision to involve a question of law, specifically one of statutory interpretation, which, even if erroneous, does not require the issuance of a writ.

The Eighth Circuit similarly relied on the Supreme Court's reasoning in *Holland* to deny a writ of mandamus:

The extraordinary writ of mandamus may lie where a district judge usurps power and acts beyond his jurisdiction. But even if the district court may have erred in its construction of [a statute] (which we do not decide), mandamus is not appropriate here.... The mere fact that a court acts erroneously is not usurpation of power. "Jurisdiction to decide is jurisdiction to make a wrong as well as a right decision."

*River Valley, Inc. v. Dubuque County*, 507 F.2d 582, 585 (8th Cir.1974) (citations omitted).

In light of the statutory and constitutional questions we have noted, this case is inappropriate for a writ of mandamus, which should generally be issued only in cases where doubt has been removed. The evidence that the district court exceeded its authority is not sufficiently clear and indisputable to justify issuance of the writ.

## V.

We therefore affirm Horak's judgment of conviction under section 1962(c) and affirm the forfeiture of his job. We vacate and remand for further proceedings the forfeiture order with respect to other matters under section 1963(a)(1). In light of this vacatur, we also vacate and remand for reconsideration the prison sentence and fine in the event any corresponding adjustments are appropriate and authorized with respect to those matters.[15] *See Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 979–82, 89 L.Ed.2d 104 (1986); *Wasman v. United States*, 468 U.S. 559, 569–71, 104 S.Ct. 3217, 3223–24, 82 L.Ed.2d 424 (1984);

---

15. The following excerpt from the oral argument discloses the views of Horak's appellate counsel with respect to modification of other parts of the sentence:

> JUDGE EASTERBROOK: Let me go briefly to the other forfeiture problem: the problem of forfeiting his salary, his pension, his bonuses, etc., etc., etc. Suppose we were to agree with that and conclude that the forfeiture order had to be reduced. Do you have any problem with our then vacating the entire package of sentences and remanding so that the district judge can resentence? See, my problem is as follows: The district judge thought he was giving a package of sentences which had in it six months in jail and an enormous fine in the

> way of a forfeiture. And you're telling us that the forfeiture, the monetary sanction, has to go way down. Well, wouldn't the logical consequence of that be that the district judge would be allowed to take the penal sanction up?
> MR. COUGHLIN [Counsel for Horak]: It's my understanding that when I come to this court in appeal, that I'm putting at risk the sentence, that kind of sentence. I think that....
> JUDGE EASTERBROOK: And Mr. Horak's agreeable to that risk?
> MR. COUGHLIN: That's right. Mr. Horak has served his time that he's been sentenced to already despite the appeal and he's willing to look at that.

*Chaffin v. Stynchcombe,* 412 U.S. 17, 25–27, 93 S.Ct. 1977, 1982–83, 36 L.Ed.2d 714 (1973); *Moon v. Maryland,* 398 U.S. 319, 320–21, 90 S.Ct. 1730, 1731, 26 L.Ed.2d 262 (1970) (per curiam); *North Carolina v. Pearce,* 395 U.S. 711, 725–26, 89 S.Ct. 2072, 2080–81, 23 L.Ed.2d 656 (1969); *see also United States v. Jefferson,* 760 F.2d 821, 825 (7th Cir.), *vacated,* 474 U.S. 806, 106 S.Ct. 41, 88 L.Ed.2d 44 (1985). Finally, we dismiss for lack of jurisdiction the government's cross-appeal grounded in section 3731 and decline to issue a writ of mandamus under section 1651. The judgment of the district court is therefore

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.