**1172**

The UNITED STATES

v.

Daniel R. OFCHINICK, Sr., Daniel R. Ofchinick, Jr., a/k/a Dan Scanlon, Norsub, Inc., Somerset Mack Sales and Service, Inc., Thomas S. Stromoski, Thomas J. Nolfi, Lewis P. Richardson, a/k/a Pat Richardson, Robert C. DeLucia, a/k/a Robert C. Deluce.

Appeal of Robert C. DeLUCIA, Appellant in No. 88–3385.

Appeal of Daniel R. OFCHINICK, Sr., Appellant in No. 88–3389.

Appeal of Thomas S. STROMOSKI, Appellant in No. 88–3393.

Appeal of Lewis P. RICHARDSON, etc., Appellant in No. 88–3394.

Appeal of SOMERSET MACK SALES AND SERVICE, INC., Appellant in No. 88–3395.

Nos. 88–3385, 88–3389, 88–3393, 88–3394 and 88–3395.

United States Court of Appeals, Third Circuit.

Argued March 10, 1989.

Decided Aug. 24, 1989.

Rehearing and Rehearing In Banc Denied in Nos. 88–3385 and 88–3389 Sept. 26, 1989.

George E. Schumacher, Federal Public Defender, Joel B. Johnston, Asst. Public Defender (argued), Pittsburgh, Pa., for

Robert C. DeLucia, appellant in No. 88–3385.

Walter A. Koegler, and Harry R. Ruprecht (argued), King, Ruprecht & McQuoid, Pittsburgh, Pa., for Daniel R. Ofchinick, Sr., appellant in No. 88–3389.

Michael R. Kelly, Pittsburgh, Pa., for Thomas S. Stromoski, appellant in No. 88–3393.

Stanley W. Greenfield, Paul G. Kay, Greenfield & Associates, Pittsburgh, Pa., for Lewis P. Richardson, a/k/a Pat Richardson, appellant in No. 88–3394, and Somerset Mack Sales and Service, Inc., appellant in No. 88–3395.

J. Alan Johnson, U.S. Atty., Bonnie R. Schlueter, Asst. U.S. Atty. (argued), Pittsburgh, Pa., for appellee.

Before SLOVITER and BECKER, Circuit Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal from judgment of conviction against six individual and two corporate defendants on counts of mail fraud, interstate transportation of fraudulently obtained securities, conspiracy, and racketeering. We find that the attacks on the convictions themselves and on the restitution portion of the sentence are lacking in merit. The forfeiture portion of the sentence of one of the defendants, however, entered pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), presents significant problems, and this opinion will be limited to a discussion thereof. Because several aspects of the forfeiture judgment are not supported by substantial evidence, we will vacate a significant portion of the forfeiture judgment and remand with instructions.

## I. FACTS AND PROCEDURAL HISTORY

Mack Trucks, Inc. ("Mack") manufactures heavy duty trucks and sells them through independently owned distributors. The distributors sell both new Mack trucks and the used trucks that they take in trade from purchasers of new Mack trucks. In order to facilitate the sale of new Mack trucks, Mack's wholly owned subsidiary, Mack Financial Corporation ("MFC"), provides financing both to purchasers of new Mack trucks and to purchasers of used trucks obtained by a distributor through a trade-in. MFC makes a loan to a purchaser only if the purchaser makes a substantial down payment on the truck purchased and only if the truck serves as loan collateral.

As established by the jury's verdict, which was supported by the evidence, the fraud for which the defendants were convicted involved a scheme by which they induced MFC to extend approximately $7 million in credit to finance the purchase of over 150 used trucks that were neither new Mack trucks nor trucks obtained through a trade-in on the sale of a new Mack. Additional elements of the fraudulent scheme included inadequate down payments, misrepresentation of the financial background of those purchasing the trucks, and misrepresentation of the value of the trucks serving as collateral for the loans such that the truck loans, in many cases, were in amounts that exceeded the value of the collateral. Much of the money that MFC had extended on credit was pocketed by the defendants. Many of the nominal borrowers on the loans, who were either fictional persons or truck drivers whom several of the defendants had induced to sign loan applications, soon defaulted on the loans. MFC was left with substantial losses when it was forced to repossess the fraudulently overvalued trucks from whose owners it could not collect the loan balances.

At the hub of the conspiracy was Norsub, Inc. ("Norsub"), a Pennsylvania corporation engaged in the trucking business. The kingpins of the scheme were Daniel R. Ofchinick, Sr., Norsub's sole shareholder, and his son, Daniel R. Ofchinick, Jr., who

managed Norsub's daily operations. Ofchinick, Jr. purchased the used trucks, many of which were in poor condition, during the period January 1982 through March 1983. The Ofchinicks then sold the trucks (or in some cases effected a nominal transfer of title) to Norsub truck drivers or to fictional persons. Robert DeLucia, then engaged to Ofchinick, Sr.'s granddaughter, participated in the scheme by taking title to a number of the trucks and by helping to persuade truck drivers to purchase the trucks, thereby providing the means of setting up the loans from which the defendants benefited.

Because Norsub was not a Mack distributor, the Ofchinicks enlisted Somerset Mack Sales and Service, Inc. ("Somerset Mack"), a Mack distributor, to obtain MFC financing on the trucks. Lewis P. Richardson, the Vice President of Somerset Mack, signed 59 blank MFC contracts for the sale of 153 vehicles. Ofchinick, Jr. completed the MFC credit applications to obtain loans on the trucks. In order to evade MFC limitations on the amount of credit that could be extended to any one person, the Ofchinicks did not list themselves or Norsub as the purchaser of the truck; instead, in many cases, the credit applications stated that the borrower was a Norsub truck driver or fictional person. Somerset Mack (and another Mack distributor, West Virginia/Ohio Motor Sales, Inc., which arranged financing for seven of the trucks) received the money from MFC, took out fees and dealer reserve, and paid over the balance to Norsub. Norsub cashed the checks and distributed most of the money to the Ofchinicks personally. Thomas S. Stromoski, an MFC district manager, and Thomas J. Nolfi, an MFC field manager, both of whom knew of the fraudulent scheme, processed the fraudulent credit applications at MFC and ensured that the loans were extended.

On August 17, 1987, a grand jury returned a 59–count indictment against the two Ofchinicks, DeLucia, Richardson, Stromoski, Nolfi, Norsub, and Somerset Mack. Each of the defendants was named in the first 58 counts. Counts 1 through 44 charged that each of the defendants had used the mails in executing a scheme to defraud MFC in violation of 18 U.S.C. § 1341 (1982). Counts 45 through 57 charged that each of the defendants had caused securities, known to be obtained by fraud, to be transported in interstate commerce in violation of 18 U.S.C. § 2314 (1982). Count 58 charged that each of the defendants had conspired to violate those two statutes.

Count 59 charged Ofchinick, Sr., Ofchinick, Jr., and Norsub with violating section 1962(a) of the RICO statute, 18 U.S.C. § 1962(a) (1982). Section 1962(a) states that

[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to ... invest ... any part of such income, or the proceeds of such income, in ... any enterprise ... engaged in ... interstate ... commerce.

18 U.S.C. § 1962(a) (1982). One element of section 1962(a) that the government must prove beyond a reasonable doubt is the existence of an enterprise. An enterprise is defined as including "any ... group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (1982). The indictment alleged that the following two individuals and four corporations constituted an association-in-fact enterprise: Ofchinick, Sr.; Ofchinick, Jr.; Norsub; Norberry, Inc., a real estate company the two officers of which were daughters of Ofchinick, Sr.; Norla, Inc., another real estate company with the same officers; and the Pittsburgh Revival Center, a church of which Ofchinick, Sr. is the deacon. The four entities were jointly managed by Ofchinick, Sr. and Ofchinick, Jr., and each received money generated by the scheme to defraud MFC.

The district court dismissed Counts 37 and 38 of the indictment. The defendants were tried by a jury on the remaining counts. All of the defendants were found guilty as charged on all counts submitted to the jury. The district court sentenced each of the individual defendants, except Nolfi, to a term of imprisonment. Each of the Ofchinicks was ordered to pay restitu-

tion of $3,998,629.54 to MFC and its insurance companies pursuant to the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663 (Supp. V 1987), for losses sustained from the scheme. In addition, Ofchinick, Sr. and Norsub were each ordered to forfeit $6,288,500, and Ofchinick, Jr. was ordered to forfeit $2,625,928, pursuant to the forfeiture provision of the RICO statute, 18 U.S.C. § 1963(a) (1982) (subsequently amended). Section 1963(a) provides that those who violate section 1962 "shall forfeit ... any interest ... acquired or maintained in violation of section 1962 ... and ... any interest ... affording a source of influence over [the] enterprise ... conducted ... in violation of section 1962." 18 U.S.C. § 1963(a).

The RICO forfeiture awards were made pursuant to a special verdict form. The aspect of the awards that concerns us is the forfeiture judgment entered against Ofchinick, Sr. The special verdict form given to the jury during the post-trial forfeiture proceeding against Ofchinick, Sr. contained the following eight questions, answered by the jury as follows:

1a. Did ... Ofchinick, Sr., acquire or maintain any interest in gross proceeds obtained from [MFC] in violation of § 1962(a) of RICO? [Yes]

1b. If your answer to question 1(a) is "yes," enter the amount of the interest of ... Ofchinick, Sr., which was so acquired or maintained. [$2,591,620.00]

1c. Do the gross proceeds obtained from [MFC] represent, with regard to ... Ofchinick, Sr., any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over the enterprise which ... Ofchinick, Sr., established, operated, controlled, conducted, or participated in the conduct of in violation of § 1962(a) of RICO? [Yes]

1d. If the answer to question 1(c) is "yes," enter the amount of such interest, security, claim or property or contractual right. [$2,591,620.00]

2a. Did ... Ofchinick, Sr., acquire or maintain any interest in the stock of Nor-

sub, Inc., in violation of § 1962(a) of RICO? [Yes]

2b. If your answer to question 2(a) is "yes," enter the amount of the interest of ... Ofchinick, Sr., which was so acquired or maintained. [$255,000.00]

2c. Does the stock of Norsub, Inc., represent with regard to ... Ofchinick, Sr., any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over the enterprise which ... Ofchinick, Sr., established, operated, controlled, conducted, or participated in the conduct of in violation of § 1962(a) of RICO? [Yes]

2d. If the answer to question 2(c) is "yes," enter the amount of such interest, security, claim or property or contractual right. [$6,288,500.00]

(How the jury arrived at these particular figures will be discussed in part II of this opinion.) The district court ordered forfeiture by Ofchinick, Sr. of $6,288,500. Dist. Ct.Order 2 (April 8, 1988).

Nolfi chose not to appeal. The remaining defendants filed timely notices of appeal. Ofchinick, Jr.'s appeal was dismissed on the ground that he had escaped from custody. Norsub's appeal was subsequently withdrawn.

Appellants have raised a number of arguments challenging their convictions. They variously contend that the convictions must be vacated for lack of evidence sufficient to support the verdict; that the evidence introduced at trial was at fatal variance from the description of the fraudulent scheme alleged in the indictment; and that the district court prejudiced their case through erroneous jury instructions, erroneous limitations on cross-examination, erroneous exclusion of exculpatory evidence, and failure to declare a mistrial due to juror misconduct. Ofchinick, Sr. contends that the conviction violated his constitutional right of free exercise of religion, and he also objects to the restitution order. We have carefully considered each of these arguments but have concluded that they are without merit. We will therefore affirm the appellants' convictions and the restitution order entered against Ofchinick, Sr.

Ofchinick, Sr., however, raises several meritorious points concerning the sufficiency of evidence supporting the RICO forfeiture judgment entered against him, and it is to these points that we now turn.

## II. THE RICO FORFEITURE JUDGMENT

The RICO statute contains two sections pertinent to this case. The first is section 1962. Ofchinick, Sr. was convicted pursuant to section 1962(a), which makes it a crime to invest "income derived ... from a pattern of racketeering activity ... or the proceeds of such income ... in ... any enterprise." 18 U.S.C. § 1962(a) (1982). The second pertinent section is section 1963(a), the RICO forfeiture provision pursuant to which Ofchinick Sr.'s $6,288,500 forfeiture was assessed. That section provides as follows:

> Whoever violates any provision of section 1962 of this chapter ... shall forfeit to the United States (1) any interest he has acquired or maintained in violation of section 1962, and (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which he has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962.

18 U.S.C. § 1963(a) (1982) (subsequently amended).

■ The forfeiture provision of section 1963(a) reflects a Congressional determination that new remedies were needed to fight organized crime. Congress believed that the economic power of organized crime derived from its huge illegal profits and that any attack on organized crime would fail if it did not reach racketeering profits and the economic base from which organized crime exercised control over the economy. *See Russello v. United States*, 464 U.S. 16, 27–28, 104 S.Ct. 296, 302–03, 78 L.Ed.2d 17 (1983) (reviewing legislative history of the RICO statute). If the indictment alleges that property is subject to criminal forfeiture, a special verdict must be returned as to the extent of the property subject to forfeiture. *See* Fed.R.Crim.P. 31(e).

■ In the case at bar the principal issue is whether the jury's answers to the special verdict questions are supported by sufficient evidence. We apply a deferential standard of review to sufficiency of evidence claims. On direct appeal from a criminal conviction, the verdict of the jury must be sustained " 'if there is substantial evidence, taking the view most favorable to the Government, to support it.' " *United States v. Aguilar*, 843 F.2d 155, 157 (3d Cir.) (quoting *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)), *cert. denied*, — U.S. —, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988). We will apply the substantial evidence standard when reviewing the forfeiture verdict in the instant case because: (1) that is the standard of review that has traditionally been used when reviewing jury verdicts in a criminal case on issues on which the government has the burden of proving the facts beyond a reasonable doubt, *see, e.g., Aguilar*, 843 F.2d at 157; and (2) the district court, without objection by the government, instructed the jury that the government must prove its forfeiture case in accordance with the reasonable doubt standard, *see* Trans. at 36, 38–39 (March 15, 1988). In addition, the government on appeal has urged us to apply the substantial evidence standard. *See* Appellee's Br. at 70.[1]

---

**1.** Because the government did not object to the jury instructions in this case, we need not and do not decide whether beyond a reasonable doubt is the appropriate standard of proof in RICO forfeiture proceedings. *See generally United States v. McKeithen*, 822 F.2d 310, 312 (2d Cir.1987) (government's burden in criminal forfeiture proceedings is proof beyond a reasonable doubt); *United States v. Sandini*, 816 F.2d 869, 874–76 (3d Cir.1987) (discussing burden of proof in forfeiture proceedings pursuant to 21

U.S.C. §§ 848(a), 853(d) (1982 & Supp. V 1987)); *United States v. Horak*, 833 F.2d 1235, 1243–44, 1246 (7th Cir.1987) (noting government's concession in a RICO forfeiture case that its burden is proof beyond a reasonable doubt); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195–96 (3d Cir.1984) (discussing burdens of proof in forfeiture proceedings pursuant to 21 U.S.C. § 881(a) (1982 & Supp. V 1987)); S.

*A. Is there sufficient evidence to support the jury's $6,288,500 answer to special verdict question 2d?*

■ The jury's answer to special verdict question 2d ($6,288,500) was the basis of the district court's $6,288,500 forfeiture judgment against Ofchinick, Sr. Ofchinick, Sr. contends that the jury's answer to question 2d is unsupported by substantial evidence.

Through its "yes" answers to questions 2a and 2c, the jury determined that Ofchinick, Sr. owned stock in Norsub and that this stock represented " 'an[ ] interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over' " the enterprise which Ofchinick, Sr. " 'established, operated, controlled, conducted, or participated in the conduct of' " in violation of section 1962(a) of RICO. Special Verdict Question 2c (quoting 18 U.S.C. § 1963(a)(2)). These determinations are supported by substantial evidence. The government presented uncontradicted evidence that Ofchinick, Sr. was Norsub's sole shareholder, and Ofchinick, Sr.'s stock holdings in Norsub clearly afforded him "a source of influence over" the enterprise, as Norsub was a key player in the enterprise described above. Through its answer to question 2d, the jury found that $6,288,500 was "the amount of such interest, security, claim or property or contractual right." The *such* interest" of question 2d plainly refers to the interest (the Norsub stock) that the jury found in question 2c afforded Ofchinick, Sr. a source of influence over the enterprise. Hence the jury found through its answer to question 2d that "the amount of" Ofchinick, Sr.'s stock that afforded him a source of influence over the enterprise equalled $6,288,500.

The issue presented, therefore, is whether there is substantial evidence, taking the view most favorable to the government, to support the jury's conclusion that Ofchinick, Sr.'s stock was worth $6,288,500. The government introduced evidence that Ofchinick, Sr. owned 25,500 shares of Norsub stock and that these shares had a $10 par

value. *See* Trans. at 7–8 (Feb. 12, 1988). The total par value of Ofchinick, Sr.'s stock was therefore $255,000 (which explains how the jury arrived at its answer to question 2b, *see infra* part II–E). The economic value of the stock, of course, can be higher or lower than the par value of the stock. *See* H. Henn & J. Alexander, *The Laws of Corporations and Other Business Enterprises* 283 n. 2 (1983). Par value represents only the minimum amount for which the corporation may issue the stock. *See* 15 Pa.Stat.Ann. § 601, 1603(A) (Purdon 1967) (repealed effective Oct. 1, 1989).

Apart from the par value of the stock, the government has directed our attention to only one piece of evidence introduced at trial that would bear on the economic value of Ofchinick, Sr.'s stock: that Norsub was in bankruptcy by the time of the trial. *See* Appellee's Supp.Mem. at 2 (April 24, 1989). The district court's restitution finding with respect to Norsub states that Norsub "does not have the financial ability to make restitution; the corporation has been declared bankrupt and apparently has no assets at present." Dist.Ct.Op. 2 (June 9, 1988). Since the par value of Ofchinick, Sr.'s stock was $255,000 and the only other evidence bearing on economic value was that the stock was worthless, the jury's finding that the stock was worth $6,288,500 would not seem to be supported by substantial evidence.

The government, however, explains the $6,288,500 answer to question 2d as corresponding to the total amount of checks issued to Norsub on the MFC contracts, which, as shown in a government exhibit placed into evidence, equalled precisely $6,288,500. We do not take issue with the government's suggestion that this is how the jury arrived at its verdict, but we must examine the legal conclusion that the government seeks to draw from this assertion. The government contends that *Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983), defined the word "interest" in section 1963(a) quite broadly—so broadly, in fact, that Ofchinick, Sr., as sole shareholder of Norsub, had

Saltzburg & H. Perlman, 2 *Federal Criminal Jury* *Instructions* ch. 60.13, at II–20 (1985).

an interest in the checks issued to Norsub on the MFC contracts. *See* Appellee's Supp.Mem. at 4, 7 (April 4, 1989) ("[W]e submit that the jury implicitly found that Ofchinick, Sr. was the alter ego of Norsub" and that Ofchinick, Sr. therefore "had a 100% interest in Norsub that gave him a 100% interest in the $6,288,500.").[2]

We need not decide whether the government's argument is correct because it is irrelevant. The argument, if correct, would support an answer of $6,288,500 to special verdict question 1b (which asked what the amount of the interest in gross proceeds was that Ofchinick, Sr. acquired from MFC), but the jury answered that question with a lesser figure. The government's argument cannot provide the missing evidence that the government needs to support the jury's answer to question 2d. That question, as explained above, asked what was "the amount of" Ofchinick, Sr.'s

stock that afforded him a source of influence over the enterprise.[3] As we have explained, there is no evidence from which a reasonable jury could find that that stock was worth $6,288,500. That Ofchinick, Sr. may have had an interest in the $6,288,500 (as the government contends) says nothing about whether Ofchinick, Sr.'s stock was worth $6,288,500.[4]

For the foregoing reasons, we will vacate the district court's $6,288,500 forfeiture order because it was based on the jury's answer to special verdict question 2d and the record does not contain sufficient evidence to support that answer.

*B. Is there sufficient evidence concerning the value of the Norsub stock to warrant the grant of a new trial to the government on question 2d?*

 Having failed to present sufficient evidence to support the jury's answer

---

**2.** Ofchinick, Sr. contends that "[a]t no point in the case was the jury ever asked to consider the application of the alter ego doctrine." Appellant's Supp.Mem. at 4 (April 19, 1989). The government does not directly refute this contention but responds by noting that the government, in closing to the jury on the substantive counts of the indictment, argued that Ofchinick, Sr. was the sole stockholder of Norsub. *See* Appellee's Supp.Mem. at 1 (April 24, 1989). In our view, the government failed to raise the alter ego or corporate veil-piercing issue at trial, although, as discussed in the text, we do not ground our decision on the government's failure to raise the issue.

**3.** We note that the special verdict questions in this case seem highly unusual. In most cases in which an asset such as an automobile, house, or security instrument is forfeitable, what is forfeited is the automobile, house, or security instrument, rather than what the jury estimates that asset to be worth. *See, e.g., United States v. Walsh,* 700 F.2d 846, 857 (2d Cir.) (ownership interest in racketeering enterprise forfeited rather than the value of that interest), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *but cf. United States v. Ginsburg,* 773 F.2d 798 (7th Cir.1985) (en banc) (holding that the proceeds of illegal activity need no longer be in existence in order to be subject to forfeiture), *cert. denied,* 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986). Since Ofchinick, Sr., however, did not object to the special verdict questions either at the trial or in his briefs submitted to this court prior to oral argument, we need not decide whether the government effort to seek a forfeiture of the jury-estimated value of

the Norsub stock rather than the stock itself would be proper in a case in which the defendant did object. *See* Fed.R.Crim.P. 52; Fed.R. App.P. 28(a)(2).

**4.** We also note that, since neither the government nor the defendant has challenged the formulation of the special verdict questions, we need not and do not decide whether the formulation of special verdict question 2d was an appropriate implementation of section 1963(a)(2). There would appear to be a circuit split as to how section 1963(a)(2) should be interpreted in a section 1962(a) case. *Compare United States v. Porcelli,* 865 F.2d 1352, 1362–66 (2d Cir.1989) (interest in section 1962(a) enterprise forfeitable pursuant to section 1963(a)(2) only to the extent that the interest is "derived from racketeering activity") *with United States v. Horak,* 833 F.2d 1235, 1243 (7th Cir.1987) (any interest in section 1962(a) enterprise is forfeitable even if interest is not "related to ... racketeering activity"). Under *Porcelli,* the Norsub stock would not be forfeitable in a section 1962(a) case unless the government proved that the Norsub stock was purchased with racketeering income. Under *Horak,* the Norsub stock would be forfeitable in a section 1962(a) case even if it was a legitimate investment in the enterprise, i.e. an investment unrelated to Ofchinick, Sr.'s investment of racketeering income in the enterprise in violation of section 1962(a). (Under *Horak,* a $10 investment of ill-gotten gains in an enterprise could result in a $1,000,-000 forfeiture of legitimate investments in the enterprise.) Since Ofchinick, Sr. has never raised this issue, we do not reach it in this case.

to question 2d, the government contends that the entire forfeiture verdict should be vacated so as to allow the government to present forfeiture evidence to a new jury on each of the special verdict questions. *See* Supp.Mem. at 7 (April 4, 1989). We disagree. A principal advantage of using a special rather than a general verdict is that an error may only affect a few of the trial court's findings, thus limiting a new trial or vacatur of the judgment to the issues covered by the tainted findings. *See Pritchard v. Liggett & Myers Tobacco Co.*, 370 F.2d 95, 95–96 (3d Cir.1966) (per curiam), *cert. denied*, 386 U.S. 1009, 87 S.Ct. 1350, 18 L.Ed.2d 436 (1967); John R. Brown, *Federal Special Verdicts: The Doubt Eliminator*, 44 F.R.D. 338, 348 (1968).[5]

The only case cited by the government to support its contention is *United States v. Sandini*, 816 F.2d 869 (3d Cir.1987). In that case, we held that the district court's refusal to allow the defendant to testify at his forfeiture proceeding was erroneous, and we consequently granted the defendant a new trial on the forfeiture aspect of the case. In the instant case, by contrast, our decision vacating the forfeiture award rests not on any procedural error of the district court but on the failure of the government to present sufficient evidence to sustain the jury's answers to the special verdict questions presented to it. That a new trial was awarded the defendant in *Sandini* to remedy a district court error depriving the defendant of a fair proceeding in the first instance clearly does not require us to award the government a new trial on each of the special verdict questions to remedy its failure of proof with respect to the jury's answer to question 2d.

That the jury's $6,288,500 answer to question 2d is unsupported by substantial evidence does not in and of itself mean, however, that any answer to question 2d other than zero would be unsupportable. If the government had introduced sufficient evidence from which a jury could reach an answer to question 2d other than zero, the proper remedy would be to allow the government to retry question 2d. *Cf. United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (affirming order of court of appeals that vacated improper sentence and remanded for resentencing); *Pritchard, supra.* In the instant case, however, as explained above in part II–A, the government did not put on any evidence concerning the economic value of the Norsub stock. Consequently, the government did not meet its burden of proof on this issue, and the question should not have gone to the jury in the first instance. Any answer as to the value of the Norsub stock in this case would be based on speculation.

The counterargument is that the government introduced evidence that the par value of the stock was equal to $10 and that Ofchinick, Sr. owned 25,500 shares of stock. The evidence indicated that Norsub issued this stock to him during 1981 and early 1982, and, if one assumes that Ofchinick, Sr. obeyed the corporate law of Pennsylvania, Norsub's state of incorporation, the evidence indicates that he paid, at a minimum, $255,500 for the Norsub stock shortly before the flowering of the racketeering scheme.[6] Although the govern-

---

5. Since we reject on procedural grounds the government's contention that it is entitled to a new trial on each of the special verdict questions, we need not decide whether the government's proposal to vacate the entire forfeiture verdict and start from scratch would violate the double jeopardy provision of the fifth amendment. On the double jeopardy issue, see *Lockhart v. Nelson*, — U.S. —, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988); *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986); *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *Horak*, 833 F.2d at 1246.

6. *See* 15 Pa.Stat.Ann. § 601 ("Any corporation organized ... under [the] law of [Pennsylvania] may sell ... its authorized but unissued capital stock ... at par or such price in excess of par...."); *Id.* § 1603(A) ("Subscriptions for shares having a par value shall be made payable with money to an amount not less than the aggregate par value of the shares subscribed for or with consideration other than money, the fair value of which to the corporation is not less than the aggregate par value of the shares subscribed for.").

ment did not introduce any direct evidence as to the economic value of the Norsub stock, one can infer from the fact that Ofchinick, Sr. presumably paid at least $255,500 for the stock shortly before the implementation of the racketeering scheme that the stock may have been worth close to this amount during the scheme (absent any evidence of a deterioration of Norsub's financial position during the scheme).

This counterargument is unconvincing, however, for two reasons. First, Norsub's financial position obviously did deteriorate subsequent to Ofchinick, Sr.'s purchase of the Norsub stock, since Norsub was bankrupt and "apparently [without] assets" at the time of the forfeiture proceeding. Dist.Ct.Op. 2 (June 9, 1988). Second, special interrogatory questions 2c and 2d requested by the government are phrased in the present rather than past tense: the government was therefore asking the jury for the value of the stock at the time of the forfeiture proceeding (after the Norsub bankruptcy). Since neither the government nor Ofchinick, Sr. has raised the issue of whether the special verdict questions were correctly formulated in asking for the valuation of the interest in the enterprise at the time of the forfeiture proceeding, we need not decide the time at which the interest in the enterprise should properly be evaluated. *Cf. supra* note 3 (noting that we do not decide whether the special verdict questions were correct in permitting the government to seek the jury-estimated value of the Norsub stock rather than the Norsub stock itself).

For the foregoing reasons, we conclude that the government is not entitled to retry question 2d. Since the sufficiency of evidence problem with respect to question 2d leaves the jury's answers to the other special verdict questions undisturbed, we must decide whether there is sufficient evidence to support the jury's answers to the other special verdict questions.

## C. Is there sufficient evidence to support the jury's $2,591,620 answer to special verdict question 1b?

■ Through its answers to question 1a (yes) and question 1b ($2,591,620), the jury found that the "amount of" the "interest in gross proceeds obtained from [MFC] in violation of § 1962(a) of RICO" that Ofchinick, Sr. "acquired or maintained" equalled $2,591,620 and that this amount was forfeitable pursuant to section 1963(a)(1). The government explains the $2,591,620 figure as being derived from two government exhibits placed into evidence. The first exhibit (government exhibit 1131) traces what happened to 30 checks totalling $6,288,500 that the two Mack distributors issued to Norsub. The exhibit shows that Norsub used $4,134,748 of this money to purchase treasury checks and that much of the rest of the money went to Ofchinick, Jr. The second exhibit (government exhibit 1132) sets forth the various payees of each of the many treasury checks that Norsub purchased and the amount of each check. The government explains the jury's $2,591,620 figure by noting that if one totals all of the treasury checks made out to Ofchinick, Sr. (or to Ofchinick, Sr. or his wife Anne C. Ofchinick) the total equals precisely $2,591,620. The government has therefore shown that, through a pattern of racketeering activity, Ofchinick, Sr. succeeded in acquiring treasury checks totalling $2,591,620 made out either to him or to him or his wife. The jury's $2,591,620 answer to question 1b would therefore appear to be supported by substantial evidence so that this amount would be properly forfeitable pursuant to section 1963(a)(1). "[A]ctual 'ill-gotten gains' or 'booty' from racketeering activity ... are forfeitable interests" under section 1963(a)(1). *United States v. Horak*, 833 F.2d 1235, 1242-43 (7th Cir. 1987).[7]

7. Ofchinick, Sr. has never contended that in a section 1962(a) case the only racketeering profits that are "acquired or maintained" in violation of § 1962(a), and hence subject to forfeiture pursuant to § 1963(a)(1), are those racketeering profits that are invested in a § 1962(a) enterprise, on appeal to racketeering profits spent, for example, on consumer items. *Compare United States v. Zang*, 703 F.2d 1186, 1195 (10th Cir.1982) (holding that interest subject to forfeiture pursuant to § 1963(a)(1) in a § 1962(a) case is "any interest *in an enterprise*

Ofchinick, Sr., however, argues that the district court erred by refusing to deduct the "direct costs" of his racketeering, as another district court did in a case later reviewed by the Second Circuit. *See United States v. Lizza Industries, Inc.*, 775 F.2d 492, 497–99 (2d Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1459, 89 L.Ed.2d 716 (1986). *Lizza*, however, held that that district court had not erred in refusing to deduct overhead expenses and taxes paid on the racketeering profits; in addition, *Lizza* did not address whether a district court *must* deduct direct costs because the district court had deducted direct costs in that case. The government submits that Ofchinick, Sr.'s argument is "the height of effrontery [since it] demands that this Court acknowledge that crime is a business and, like any other business, certain expenses are incurred." Appellee's Br. at 73.

The issue of the extent to which direct costs may be deducted from racketeering profits is not free from doubt. Fortunately, we need not resolve the issue in this case. Ofchinick, Sr. has not directed our attention to any direct costs that should have been taken into account but were not. Although someone had to pay for the many used trucks involved in this scheme, Ofchinick, Sr. has not directed us to any evidence that he bore any of this cost. If direct costs need be taken into account, it is the defendant who has the burden of going forward on this issue (if not the burden of

proof, an issue we do not reach). The government should not have to prove the absence of direct costs in a case in which the defendant has not pointed to costs that might be deductible.[8] Ofchinick, Sr. has not met his burden of going forward on the issue of direct costs. Consequently, the district court could not have erred in failing to require that direct costs be taken into account.

For the foregoing reasons, we hold that the jury's answer to question 1b is supported by the evidence and properly supports a forfeiture judgment of $2,591,620 pursuant to section 1963(a)(1).

*D. Should the jury's $2,591,620 answer to question 1d augment the $2,591,-620 forfeiture award pursuant to question 1b?*

■ Questions 1c and 1d track section 1963(a)(2). The jury clearly arrived at the $2,591,620 answer to question 1d by totalling the same treasury checks that it used to provide its $2,591,620 answer to question 1b. We do not believe that Congress intended forfeiture verdicts to double if property forfeitable under section 1963(a)(1) also happened to be forfeitable under section 1963(a)(2). To read the statute to permit such verdict doubling would introduce an arbitrariness into the statute that could not have been contemplated by Congress.[9]

acquired or maintained through racketeering income" (emphasis added)), *cert. denied*, 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983), *with Russello v. United States*, 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (construing § 1963(a)(1) to reach profits and proceeds acquired in violation of § 1962(c) without regard to whether they were interests in the enterprise). Under this view, the special verdict questions and the district court's jury instructions were flawed in that they permitted the jury to answer question 1b without finding that the $2,591,620 had been invested in the enterprise. Since Ofchinick, Sr. never raised the point, however, it has been waived, and we do not reach the issue in this case.

**8.** Under our decision in *United States v. Sandini*, 816 F.2d 869 (3d Cir.1987), the forfeiture proceedings are bifurcated from the proceedings adjudicating the guilt of the defendant, thus preventing the defendant's evidence at the for-

feiture proceedings from prejudicing his criminal trial.

**9.** Nor would doubling contribute to the fundamental purpose of RICO forfeiture: to separate the racketeer from his "racketeering profits" and " 'the economic base through which [racketeers] constitute such a serious threat to the economic well-being of the Nation.' " *Russello v. United States*, 464 U.S. 16, 27–28, 104 S.Ct. 296, 302–03, 78 L.Ed.2d 17 (1983) (citation omitted). Once the government has successfully achieved the forfeiture of all forfeitable property, that purpose has been achieved. Attempting to separate the racketeer from the property *again* would be impossible (as the government already has it). Mandating that the racketeer forfeit the money value of the property already forfeited would seem to be an awkward procedure not contemplated by Congress since it would not serve the purpose of the statutory scheme (as the racketeer has already suffered the forfeiture of the property).

We therefore need not decide whether the jury's $2,591,620 answer to question 1d is supported by substantial evidence since we have already held that the $2,591,620 is properly forfeitable pursuant to the jury's answer to question 1b. Property forfeitable under both section 1963(a)(1) and section 1963(a)(2) is forfeitable only once. The government apparently does not contend that it is entitled to the $2,591,620 twice. *See* Supp.Mem. at 7 (April 4, 1989) ("If this Court were to decide that a new trial should not be held, the amount of the forfeiture award must be at least $2,591,620 plus $255,0[0]0.00").

*E. Is there sufficient evidence to support the jury's $255,000 answer to special verdict question 2b?*

■ Through its answers to question 2a (yes) and to question 2b ($255,000), the jury found that the "amount of" the "interest in the stock of Norsub" that Ofchinick, Sr. "acquired or maintained" in violation of section 1962(a) equalled $255,000 and that this amount was hence forfeitable pursuant to section 1963(a)(1). The figure $255,000 is equal to the par value of Ofchinick, Sr.'s Norsub stock ($10 per share) multiplied by the number shares that Ofchinick, Sr. owned (25,500).

At first blush, the most obvious potential defect in the jury's answer to question 2b is that it used the par value of the Norsub stock as a method of determining the stock's economic value. Since Norsub was in bankruptcy at the time of the forfeiture proceedings, the par value of the stock, as we noted in part II–B, does not accurately indicate the stock's real value at that time. We therefore held in part II–B that the government was not entitled to a new trial with respect to questions 2c and 2d, since questions 2c and 2d were phrased in the present tense, suggesting that the Norsub stock was to be valued in accordance with its worth at the time of the forfeiture proceedings. In part II–B, however, we also noted that the $10 par value could have some relation to the value of the stock shortly after its initial sale by the issuing corporation (since it is illegal under Penn-sylvania law for a corporation to issue its shares at a price below their par value).

Questions 2a and 2b (unlike questions 2c and 2d discussed in part II–B) seem to permit the jury to value the Norsub stock at the time Ofchinick, Sr. acquired the stock or at the time of the racketeering scheme. We therefore hesitate to hold that the jury's use of the par value of the stock to answer question 2b means that that answer is not supported by sufficient evidence: questions 2a and 2b suggest that the jury was to estimate the Norsub stock's value a time at which the stock's par value might be a suitable proxy for the stock's minimum economic value. We need not decide whether questions 2a and 2b were correctly formulated, however, because there is an independent reason why the jury's answer of $255,000 to question 2b is not supported by the evidence.

Ofchinick, Sr. argues that this amount cannot be forfeited because the evidence failed to establish that the Norsub stock "would not have been acquired or maintained 'but for' the racketeering activity." Appellants' Br. at 40 (quoting *United States v. Horak*, 833 F.2d 1235, 1243 (7th Cir.1987)). In *Horak*, the Court held that section (a)(1) divests the convicted defendant only of "all interests 'acquired or maintained' by [the racketeering] activity" and that the government must therefore establish that the interest forfeited "would not have been acquired 'but for' [the defendant's] racketeering activity." 833 F.2d at 1243. The Second Circuit has also held that the "but for" test limits section 1963(a)(1) forfeitures to interests that would not have been acquired or maintained but for the defendant's racketeering activities. *See United States v. Porcelli*, 865 F.2d 1352, 1363, 1365 (2d Cir.1989).

These decisions are sound, and we follow them. The point of section 1963(a)(1) is not to seize legitimately acquired property but "to remove the profit from organized crime by separating the racketeer from his dishonest gains." *Russello*, 464 U.S. at 28, 104 S.Ct. at 303. In the instant case, the government has failed to meet its burden of proving that Ofchinick, Sr.'s racketeer-

ing activities were a cause in fact of his acquisition of or maintenance of an ownership interest in the Norsub stock. Norsub was not a shell entity whose sole purpose was to facilitate the credit fraud perpetrated against MFC. Norsub was a bona fide freight hauler whose corporate existence preceded the credit scheme in this case. The bulk of the Norsub shares were issued to Ofchinick, Sr. prior to the scheme to defraud MFC, and the government has pointed us to no evidence in the record that Ofchinick, Sr. acquired any of the Norsub shares because of the fraudulent scheme. Nor did the government present any direct or circumstantial evidence that Ofchinick, Sr. failed to sell the Norsub stock because of the fraudulent scheme. In short, the evidence does not link in any way Ofchinick, Sr.'s decision to acquire or maintain ownership of the Norsub stock with the fraudulent scheme. Consequently, we conclude that the $255,000 answer to question 2b is not supported by substantial evidence.

### F. Summary

The jury's answer to question 2d ($6,288,500) is not supported by substantial evidence, and the government did not present sufficient evidence on that question to warrant a retrial with respect to that issue. The jury's answer to question 1b ($2,591,620) is supported by substantial evidence. The jury's answer to question 1d ($2,591,620) is duplicative of its answer to question 1b and therefore does not support an augmentation of the forfeiture judgment. The jury's answer to question 2b ($255,000) is not supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the judgments of conviction against all appellants and the restitution order entered against Ofchinick, Sr. will be affirmed.

**10.** Ofchinick, Sr. has also contended that the forfeiture judgment was so large as to violate the Eighth Amendment. In light of the facts of this case, any contention that a $2,591,620 forfeiture judgment violates the Eighth Amendment is frivolous.

**11.** We therefore need not decide whether it would be appropriate to resentence a defendant in light of a reduction in a forfeiture verdict.

The district court's judgment of forfeiture against Ofchinick, Sr. will be vacated and the case remanded to the district court with directions to enter a forfeiture judgment against Ofchinick, Sr. in the amount of $2,591,620 pursuant to 18 U.S.C. § 1963(a)(1) and the jury's answer to special verdict question 1b.[10] Since the government has not requested to have Ofchinick, Sr. resentenced in light of the reduction in the forfeiture verdict, Ofchinick, Sr. should not be resentenced on remand.[11]

With respect to resentencing after the vacatur of a portion of a sentence, see *Horak,* 833 F.2d at 152–53; *United States v. Busic,* 639 F.2d 940, 953 (3d Cir.), *cert. denied,* 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); Note, *Resentencing on Surviving Valid Counts After a Successful Appeal: A Double Jeopardy and Due Process Analysis,* 69 Cornell L.Rev. 342 (1984).