UNITED STATES of America, Appellee,

v.

Charles S. KRAVITZ, Appellant.

No. 83–1484.

United States Court of Appeals,
Third Circuit.

Argued Jan. 24, 1984.

Resubmitted Pursuant to Rule 12(6)
on Sept. 26, 1984.

Decided Oct. 3, 1984.

Rehearing and Rehearing En Banc
Denied Oct. 29, 1984.

Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Gary S. Glazer (argued), Asst. U.S. Attys., Philadelphia, Pa., for appellee.

Alan J. Hoffman (argued), Edward S. Wardell, Carl W. Hittinger, Edmunds J. Brokans, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., Stanford Shmukler (argued), Philadelphia, Pa., for appellant.

Before GIBBONS, Circuit Judge, and ATKINS, District Judge.*

* Honorable C. Clyde Atkins, United States District Judge for the Southern District of Florida,

sitting by designation. Judge Becker heard ar-

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Charles Kravitz appeals from a judgment of sentence imposed following his conviction for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (1982) ("RICO") and the Travel Act, 18 U.S.C. § 1952 (1982). He contends that his conviction should be set aside, and that in any event the court erred in ordering forfeiture of his interest as a stockholder in American Health Programs, Inc. (AHP). We hold that his objections to the RICO and Travel Act convictions are without merit,[1] and that the forfeiture order was proper. Thus we affirm.

### I.

Kravitz, a dentist, was the sole stockholder of AHP, a corporation engaged in the health care delivery business. In order to obtain a renewal of a contract for dental and other services with the Philadelphia Fraternal Order of Police (FOP), Dr. Kravitz made three cash payments totalling $7,000 between May 14, 1982 and June 4, 1982 to Robert Hurst, President of the FOP. He also made one payment of $1,000 to Michael Lutz, Secretary of the FOP. Both Hurst and Lutz were at the same time working undercover with the F.B.I. Kravitz was indicted for violation of RICO and the Travel Act, 18 U.S.C. §§ 1952, 1961–1963 (1982). The predicate offenses for the RICO violation were the briberies of Hurst and Lutz. Kravitz was tried before a jury and convicted on one RICO count and one Travel Act count. On the RICO count, Kravitz was sentenced to four years incarceration and a $25,000 fine.

After the jury returned a guilty verdict on the RICO count, several questions were prepared for submission to the jury. Under Rule 31(e) of the Federal Rules of Criminal Procedure, if an "indictment ... alleges an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any." The government proposed the following questions:

(1) Did the defendant own any shares of stock in American Health Programs?

(2) Did he maintain this interest in violation of the racketeering laws?

(3) Shall such shares of stock be forfeited to the United States?

(4) Did the defendant hold a position in American Health Programs which gave him a source of influence over the company?

(5) Did he use the position to conduct the affairs of American Health Programs through a pattern of racketeering activity?

(6) Shall the defendant be required to forfeit his position to the United States?[2]

The jury answered questions 1, 2, 4, and 5 affirmatively, and thereby found that Kravitz had used his ownership position in AHP to engage in a pattern of racketeering activity. Despite the conclusion such responses would seem to compel, the jury answered questions 3 and 6 in the negative. Although it was the government that originally prepared the questions, prior to their submission, it attempted to withdraw questions 3 and 6. Although the court submitted the questions over the government's objections, it specifically reserved for argu-

gument in this case, but did not participate in its final disposition.

1. Kravitz had argued that: (1) the predicate acts underlying his federal convictions were manufactured by the government; (2) he did not violate the Pennsylvania commercial bribery statute, 18 Pa.Cons.Stat.Ann. § 4108 (Purdon 1983), and therefore did not commit the required predicate offenses for RICO & Travel Act convictions; (3) he was prejudiced by the trial court's failure to instruct the jury regarding his

theory of the case; (4) the trial court impermissibly amended the grand jury's indictment by dismissing that portion relating to securing the AHP–FOP contract in 1979; and (5) he was denied a fair trial due to the court's failure to take adequate measures to prevent jury exposure to in-trial publicity.

2. Prior to submission of the questions, a stipulation was reached that Kravitz was the sole stockholder of AHP.

ment whether those questions, if answered negatively, were binding on the court. The district court subsequently decided that they were not. The court refused to follow the jury's recommendation and ordered forfeiture of Kravitz's stock and position in AHP.

## II.

Appellant raises three arguments on appeal on the forfeiture issue: (1) even if the forfeiture of property held in violation of RICO is mandatory, it was for the jury to decide the extent of the property used to conduct racketeering; (2) having had questions 3 & 6 submitted to the jury, appellant acquired a sixth amendment right to trial by jury on those issues; and (3) forfeiture was in violation of the eighth amendment's ban against disproportionate sentencing.

### A.

■ A primary question presented by this appeal is whether forfeiture under section 1963 is mandatory upon a finding that the appellant's property was used to promote racketeering. We conclude, as have all other courts to decide the question, that forfeiture is mandatory. *See United States v. Hess*, 691 F.2d 188, 190 (4th Cir. 1982); *United States v. Godoy*, 678 F.2d 84, 88 (9th Cir.1982), *cert. denied*, —— U.S. ——, 104 S.Ct. 390, 78 L.Ed.2d 334 (1983); *United States v. L'Hoste*, 609 F.2d 796, 809–11 (5th Cir.), *cert. denied*, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980).

Several factors compel that conclusion. The first is the plain meaning of the language employed in section 1963(a), stating that "[w]hoever violates any provision of section 1962 ... shall forfeit to the United States" the illegally used interests. As the Fifth Circuit pointed out in *L'Hoste*, although there are occasions where "shall" has been interpreted to vest discretionary, rather than mandatory, authority to act, the wording of the statute is the most persuasive evidence of Congressional intent. *L'Hoste, supra*, 609 F.2d at 810. Nor does the legislative history ever discuss forfeiture in discretionary terms, *see,*

*e.g.*, H.R.Rep. No. 91–1549, 91st Cong., 2d Sess. 57, *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4033; S.Rep. No. 91–617, 91st Cong., 1st Sess. 160 (1969). The wording of the remaining penalties established under section 1963(a) also supports a mandatory interpretation of forfeiture: section 1963(a) states that a defendant "shall be fined not more than $25,000 or imprisoned not more than twenty years, *or both* " (emphasis added). Thus, where Congress intended for the penalty to be optional, as in the choice between fine or imprisonment, they specified that there was such a choice. The section's wording provides no choice regarding the imposition of forfeiture.

Moreover, a literal reading of section 1963(a) is consistent with RICO purposes. The criminal forfeiture provision was viewed as an innovative means of addressing the spread of organized crime that has infiltrated so many aspects of American society. Of foremost concern during Congressional hearings on RICO was the weakness of current efforts at curtailing the spread of organized crime to legitimate business endeavors. For instance, the Senate Judiciary Committee's report quoted the Attorney General's testimony that:

> While the prosecutions of organized crime leaders can seriously curtail the operations of the Cosa Nostra, as long as the flow of money continues, such prosecutions will only result in a compulsory retirement and promotion system as new people step forward to take the place of those convicted.

S.Rep. No. 91–617, 91st Cong. 1st Sess. 78 (1969). The report stated that forfeiture as a penalty for the criminal offense—although disfavored throughout American history, *id.* at 79—was an innovative approach which could provide the linchpin in the renewed effort against organized crime:

> Title IX recognizes that present efforts to dislodge the forces of organized crime from legitimate fields of endeavor have proven unsuccessful. To remedy this failure, the proposed statute adopts the most direct route open to accomplish the

desired objective. Where an organization is acquired or run by defined racketeering methods, then the persons involved can be legally separated from the organization, either by the criminal law approach of fine, imprisonment and forfeiture, or through a civil law approach of equitable relief broad enough to do all that is necessary to free the channels of commerce from all illicit activity.

*Id.*

In light of RICO's central goal of inhibiting organized crime's infiltration of legitimate business, it is certainly not likely that forfeiture was viewed by its drafters as an optional penalty. At the least, a mandatory interpretation of section 1963(a)'s forfeiture would promote, rather than discourage, RICO's intended purpose. Indeed, it is consistent with RICO's own construction clause, Pub.L. No. 91–452, § 904(a), 84 Stat. 922, 947 (1970), which states that the statute "shall be liberally construed to effectuate its remedial purposes."

When Congress has opted to provide for discretionary forfeiture, it has done so expressly. Thus, under the Internal Revenue Laws there is district court discretion to remit or mitigate the forfeiture. 18 U.S.C. § 3617 (1982). The Organized Crime Control Act itself elsewhere contains a permissive, rather than mandatory, forfeiture provision. In establishing penalties for illegal gambling, Congress provided that "[a]ny property ... used in violation of the provisions of this section may be seized and forfeited to the United States." 18 U.S.C. § 1955(d) (1982).

Finally, we note that where Congress did provide for the remission or mitigation of the forfeiture order, it vested that decision-making authority with the Attorney General, not the federal courts. Section 1963(c) explicitly incorporates "[a]ll provisions of law relating to the ... remission or mitigation of forfeitures for violation of the customs laws ..."; it also imposes upon the Attorney General "[s]uch duties as are imposed upon the collector of customs ... with respect to the disposition of property ...." Under the customs laws, it is the Attorney General who has the authority to grant remission or mitigation. *See, e.g., United States v. One 1970 Buick Riviera, Ser. 494870H910774*, 463 F.2d 1168, 1170 (5th Cir.), *cert. denied*, 409 U.S. 980, 93 S.Ct. 314, 34 L.Ed.2d 244 (1972).[3] Moreover, courts have uniformly held that the remission decision of the Attorney General is not open to judicial review. *Id.* at 1170. Therefore, since 1963(c) vests the Attorney General with the powers given him under the customs laws, we conclude that any petition for remission or mitigation must be brought before the Attorney General, and that the federal courts have no authority to modify or review that decision. *Cf. United States v. Huber*, 603 F.2d 387, 397 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980) (the Attorney General's power to seize the property upon the terms and conditions set by the court provides for limited judicial modification of the forfeiture order). The role of the federal courts is thus limited under RICO to entry of judgment in accord with the jury's answers to the interrogatories, submitted pursuant to Rule 31(e) of the Federal Rules of Criminal Procedure.[4]

3. Although the customs statutes, 19 U.S.C. §§ 1613, 1618, vest that authority with the Secretary of the Treasury, Executive Order No. 6166 (June 10, 1933) transferred the remission and mitigation authority to the Attorney General when the forfeiture is ordered in a judicial proceeding. *One 1970 Buick, supra*, 463 F.2d at 1170, n. 2.

4. Kravitz also argues that the jury's refusal to order forfeiture amounted to an evaluation that only a small per cent of AHP was used to promote racketeering. Therefore, he says, assuming the mandatory nature of forfeiture under § 1963(c), forfeiture was improperly ordered. Kravitz's characterization, however, amounts to nothing more than legerdemain. The jury clearly stated, in answers 2 and 5, that Kravitz's interest in AHP, both as stockholder and officeholder, were maintained in violation of the racketeering laws. They did not decide that little or none of AHP was used to promote racketeering. They merely decided, for reasons unknown, that despite this illegal use of his company, forfeiture was not the proper remedy. Since we have held that RICO imposes mandatory forfeiture to the extent that the property is determined to have been used for racketeering, Kravitz's argument must fail.

### B.

Kravitz also argues, without explanation or citation, that he "acquired" a right to trial by jury by virtue of the court's submission of the questions, pursuant to Rule 31(e). This argument has several flaws. Since section 1963 is mandatory, not even the district court has the authority to refrain from ordering forfeiture.[5] Surely the court cannot delegate to the jury authority which it itself has not been given by the governing statute. No theory is offered to explain how a defendant acquires a right to sentencing by the jury when the applicable criminal statute, section 1963 of RICO, makes no such provision. Although a criminal statute may provide for juror participation in sentencing, the right to trial by jury does not compel such participation. *Cf. United States v. Wilson*, 506 F.2d 521, 522–23 (9th Cir.1974); *United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 58 (1970) (function of jury is to determine facts and guilt or innocence; function of judge is to impose sentence).

Kravitz also challenges the forfeiture on eighth amendment grounds. He argues that forfeiture constitutes a disproportionate penalty because AHP's contract with the FOP expired prior to indictment.[6] Since AHP was no longer providing services pursuant to the illegally secured contract, Kravitz would have us accept that the taint upon the property had dissipated, and thus that the order of forfeiture was cruel and unusual punishment, in violation of the eighth amendment.

Kravitz's eighth amendment argument completely ignores the nature of RICO's forfeiture provision. Forfeiture under RICO is an in personam penalty designed as part of the punishment for the criminal offense committed. *United States v. Cau-*

*ble*, 706 F.2d 1322, 1349 (5th Cir.1983), *cert. denied*, —— U.S. —— 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Huber*, 603 F.2d 387, 396 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). It is simply incorrect that the termination of the criminal conduct bars the imposition of punishment. Although in personam forfeiture is not commonly used in our system of jurisprudence, *see United States v. Cauble, supra*, 706 F.2d at 1345, it is nonetheless a legitimate weapon in the enforcement of our criminal laws and, as with any punishment for criminal conduct, may be imposed despite the cessation of the criminal conduct charged in the indictment. *Cf. Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 444, 77 S.Ct. 1325, 1329, 1 L.Ed.2d 1469 (1957) (forfeiture of obscene materials in an in rem proceeding is "a legal remedy sanctioned by the long history of Anglo-American law" (citations omitted)).

Although Kravitz raises the point rather indirectly, he also suggests that forfeiture constitutes a disproportionate punishment because appellant's racketeering activities were, at most, a minor or remote part of AHP's medical practice. Appellant relies on two Second Circuit decisions, *United States v. Huber*, 603 F.2d 387, 396–97 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), and *United States v. Walsh*, 700 F.2d 846, 857 (2d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983). In *Huber*, the Second Circuit, in dicta, suggested that the eighth amendment may place limitations upon the forfeiture of property used to promote racketeering. The same suggestion was made in *Walsh*. Neither *Huber* nor *Walsh*, however, invalidated a forfeiture on eighth amendment grounds, nor conclusively stated that such a challenge would succeed. The *Huber* court merely

---

5. Of course, the defendant can apply to the Attorney General for remission or mitigation. No application has been made to date in the instant case.

6. Kravitz has also argued in his original brief on appeal that forfeiture violated the eighth amend-

ment because he hid, prior to indictment, his stock interest in AHP trust. In his reply brief it appears that appellant waived his "divestiture" argument, stating that at sentencing "appellant conceded that his stock interest was subject to forfeiture despite the transfer."

stated that the remission and mitigation provisions of section 1963 could prevent eighth amendment problems, which might arise if the property to be forfeited was used only incidentally by the defendant to promote his racketeering.

Moreover, even if the eighth amendment does provide an outer limit upon the RICO's forfeiture provision—a point we need not decide today—it is clear that in this case the ordered forfeiture is proportionate to the illegal racketeering activity. In the instant case, the property seized was used to promote Kravitz's racketeering scheme—as the *Huber* court suggested, "keyed to the magnitude of a defendant's criminal enterprise," *Huber, supra,* 603 F.2d at 397—and certainly was as integral to the racketeering schemes as in other cases where forfeiture was imposed under RICO. *See, e.g., United States v. L'Hoste,* 609 F.2d 796 (5th Cir.1980), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980) (defendant's stock interest in his company ordered forfeited due to use of company to secure government contracts through illegal kickbacks).

The judgment of the district court will be affirmed.