**UNITED STATES of America**

v.

**John WILSON, et al.**

**Crim. A. No. 88–282.**

United States District Court, E.D. Pennsylvania.

Dec. 12, 1989.

John Pucci, Ron Levine, Asst. U.S. Attys., Philadelphia, Pa., for U.S.

John Wilson, pro se.

Edward Borden, Philadelphia, Pa., for Ronald Giongo.

Jack Myerson, Philadelphia, Pa., for David Grove.

James Cattalo, pro se.

## MEMORANDUM

NEWCOMER, District Judge.

Before the court is the government's motion to mold the forfeiture verdict and defendants' responses to the motion. For the reasons that follow, the court will grant the motion.

### I. *Background*

This multi-count criminal case related to conduct that occurred during the period January 1980 to February 1984. During

that time period, the defendants were narcotics officers with the Philadelphia Police Department in a unit known as "5 Squad." Defendant John Wilson was the lieutenant in the unit; defendant Ronald Giongo was the sergeant; and defendants David Grove, James Cattalo, Richard Jumper, and Francis Hilt were police officers assigned to 5 Squad. Defendants Jumper and Hilt were acquitted on all counts and charges. Each of the other four defendants [1] were convicted of conspiracy to commit and the actual commission of racketeering activity during the 1980–1984 time period while they were members of 5 Squad, in violation of 18 U.S.C. § 1962(c) (RICO) and § 1962(d) (RICO conspiracy).

The RICO conspiracy count charged the defendants with conspiring to conduct and participate in the affairs of the Philadelphia Police Department (the enterprise) through a pattern of racketeering activity, which consisted of acts of bribery, theft by extortion, robbery, Hobbs Act robbery and extortion, and possession and distribution of drugs. The indictment charged that these acts were committed by the defendants generally while on 5 Squad searches on which they stole money and drugs, sometimes in return for not arresting the person or in exchange for reducing the charges.

As found by the jury, the RICO substantive charge on which defendants were convicted consisted of twenty-two separate predicate racketeering acts including robbery during various searches, distribution of drugs stolen during searches, and receipt of payments from persons known to be drug dealers.[2]

In presenting its case, the government called approximately sixty witnesses. The two primary witnesses were Leo Ryan and Charles Hund, both former police officers who were in 5 Squad during portions of the indictment period 1980–1984.[3] Ryan and Hund both testified about numerous searches they participated in while on 5 Squad, on which money and or drugs were taken by the 5 Squad officers and never turned in. The government presented evidence on over sixty searches or incidents, each of which generally consisted of testimony from either Ryan or Hund and or the victim(s) of the search or incident.

## II. *RICO Forfeiture Verdict*

Count Two of the indictment subjected the defendants to forfeiture under 18 U.S.C. § 1963 for monies allegedly obtained from the racketeering activity committed in violation of 18 U.S.C. § 1962. In response to questions on a special verdict form,[4] the jury indicated that: (1) the "total amount of gross proceeds to the enterprise

**1.** Unless otherwise noted, references in this Memorandum to "defendants" means the four convicted defendants and excludes the two acquitted defendants.

**2.** Count Two of the indictment charged a violation of 18 U.S.C. § 1962(c) (RICO). As sent to the jury, that count consisted of thirty-seven separate predicate racketeering acts. Each of the acts was a distinct criminal event, e.g., a robbery by the officers, receipt of a bribe, or distribution of drugs, involving one or more of the defendants. The jury returned "not guilty" verdicts on fifteen of the racketeering acts.

In addition to the RICO counts, defendants Grove (three counts) and Cattalo (two counts) were convicted of distribution of drugs in violation of 21 U.S.C. § 841(a)(1); defendants Wilson and Cattalo were each convicted of three counts of giving false statements during the trial of *United States v. Ryan,* Crim. No. 87–52 (E.D.Pa. 1987), in violation of 18 U.S.C. § 1623; and each of the four defendants was convicted of three counts (with the exception of Giongo, who

was convicted of two counts) of filing a false tax return in violation of 26 U.S.C. § 7206(1). The jury acquitted defendants Wilson, Grove, Hilt, and Cattalo of a charge of conspiring to obstruct justice in the *Ryan* trial.

**3.** At the present time, both Ryan and Hund await sentencing by another judge in this district. Ryan was found guilty after a jury trial; Hund plead guilty pursuant to a plea agreement with the government.

**4.** *See* Appendix A. Fed.R.Crim.P. 31(e) requires the use of a special verdict form regarding property subject to forfeiture. *United States v. Ofchinick,* 883 F.2d 1172, 1177 (3d Cir.1989). Although there were no objections to the forfeiture verdict form used, *see* Transcript, November 8, 1989, at 27, the court and counsel were well aware that the individual apportionment question (*see* Appendix A, Question No. 4) might be surplusage and that the ultimate determination of forfeiture might be a matter for the court. Transcript, November 8, 1989, at 22–25.

that should be forfeited to the United States pursuant to the provisions of the RICO statute" was $180,700; and (2) defendants Wilson, Grove, and Cattalo should forfeit $5,000 each, and defendant Giongo should forfeit $0. *See* Appendix A (summary of forfeiture verdict form). The government now asks the court to mold the forfeiture verdict and enter judgment finding each of the four convicted defendants liable, jointly and severally, for the gross amount of racketeering proceeds of $180,700.

III. *Discussion*

■ After conviction of a person under 18 U.S.C. § 1962, the court must enter a judgment of forfeiture to the United States of the property derived from racketeering activity. 18 U.S.C. § 1963(e). Forfeiture is mandatory. *United States v. Kravitz*, 738 F.2d 102, 104 (3d Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985). Taking the view most favorable to the government, *United States v. Ofchinick*, 883 F.2d 1172, 1177 (3d Cir. 1989), substantial evidence existed in this case to support the jury's finding that monies in the amount of $180,700 were acquired by the defendants, which represented primarily monies confiscated or stolen by the defendants during official police searches that were kept by the defendants and never turned in for evidence.

Two issues are now before the court: (1) the amount of forfeiture to be imposed on the defendants; and (2) whether the defendants are jointly and severally liable on the forfeiture verdict.

A. Amount of Forfeiture

■ In the instant case, the jury's special verdict indicated a total amount of gross proceeds of the enterprise ($180,700) and also individual amounts to be forfeited by each defendant ($5,000 for each defendant, except $0 for defendant Giongo). *See* Appendix A, Questions 3 and 4. The government now argues that the jury's individual apportionment by defendant in Question 4 is irrelevant as a matter of law, because once the gross racketeering pro-

ceeds have been determined, enforcement of the forfeiture is for the court, not the jury. *See* 18 U.S.C. § 1963(e).

As charged in the indictment, the government believed that the proceeds of defendants' racketeering activity was approximately $400,000. *See* Indictment at 132–33. Based on the jury's initial verdict, which included acquittals of certain racketeering acts on which monies were alleged to have been taken, the government in its forfeiture argument to the jury suggested that the evidence indicated gross racketeering proceeds in the approximate amount of $280,000. Transcript, November 10, 1989, at 140–41. The jury's verdict of $180,700 indicates that they agreed with some, but not all, of the government's argument with respect to monies taken on various searches. The jury had difficulty answering Questions 3 and 4, which asked them to state the monetary amounts of forfeiture. For example, during their deliberations, the jury sent a note to the court stating that "[s]ome of the jurors are adamant to [i.e., against] placing a figure to questions No. 3 and No. 4. An impasse has been reached on these questions despite our urgings to the contrary." Transcript, November 10, 1989, at 148. After further instruction from the court, however, the jury continued their deliberations and shortly thereafter returned their verdict.

In *United States v. Kravitz*, 738 F.2d 102 (3d Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985), the defendant challenged a RICO forfeiture order. The jury's responses on the special verdict form indicated that Kravitz maintained an ownership position in a corporation in violation of RICO and used his position to engage in a pattern of racketeering activity. "Despite the conclusion such responses would seem to compel, the jury answered [the questions asking whether the defendant should forfeit stock in the corporation] in the negative." *Id.* at 103. The district court subsequently decided that the negative answers were not binding on it, and instead ordered forfeiture of the stock. On appeal, the Third Circuit upheld the forfeiture and concluded in pertinent

part that: (1) forfeiture is mandatory when a violation of § 1962 occurs; (2) federal courts (and juries) have no authority to remit or mitigate the forfeiture (only the Attorney General has such authority); and (3) there is no right to trial by jury on whether forfeiture should occur. *Id.* at 104–06. Finally, the Third Circuit noted that the jury, by its negative answers (to the forfeiture questions), "merely decided, for reasons unknown, that despite [the RICO violations], forfeiture was not the proper remedy. Since we have held that RICO imposes mandatory forfeiture to the extent that property is determined to have been used for racketeering, Kravitz's argument [to uphold the negative answers] must fail." *Kravitz,* 738 F.2d at 105 n. 4.

The court finds *Kravitz* instructive and applicable to the issue before the court. As applied to the instant case, *Kravitz* makes clear that forfeiture is mandatory, that neither this court nor the jury has any authority to remit or mitigate such forfeiture, and that the defendants have no right

to trial by jury on whether forfeiture should occur. Beyond dispute is the fact that the jury's forfeiture verdict indicates that each of the defendants acquired certain monies representing an interest acquired from racketeering activity and that the total amount of gross proceeds that should be forfeited is $180,700. *See* Appendix A, Questions 1–3. As in *Kravitz,* "for reasons unknown," the jury concluded that the defendants should individually forfeit only $5,000 each, with the exception of defendant Giongo, who should forfeit $0. Because the court is unable to discern any rational legal basis, on the evidence in the case, for the jury's individual apportionment amounts, particularly in light of their response to the gross proceeds question (No. 3),[5] and because the court finds that the individual apportionments constitute impermissible remission or mitigation of the proceeds acquired from defendants' racketeering activity, the court concludes that the jury's individual apportionments (Question No. 4) are not binding on the court.[6] Accordingly, the court will dis-

---

**5.** It appears that the answers to Question 4 were likely the result of the jury's misunderstanding the law as applied to forfeiture or sympathy for the defendants and or their alleged financial situation. *See, e.g.,* Transcript, November 10, 1989, at 145–46 (forfeiture arguments of defense counsel imploring jury to consider defendants' current financial situations). Of course, consideration of the current financial situation and whether the racketeering proceeds still exist would be improper as a matter of law. *See United States v. Robilotto,* 828 F.2d 940, 948–49 (2d Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 662 (1988); *see also* Transcript, November 10, 1989, at 135 (instructing jury that defendant's interest in proceeds is to be determined at the time the defendant committed the RICO violation, and that the government need not establish that the defendant has such proceeds at the current time). Similarly, remission or mitigation by the jury of the amount of forfeiture of the racketeering proceeds acquired by the defendants would similarly be improper. *United States v. Kravitz,* 738 F.2d 102, 104–06 (3d Cir.1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985).

While unable to discern any rational legal basis for the relationship of the jury's gross proceeds and individual apportionment figures, the court is well aware that the sum of the individual figures need not equal the gross proceeds amount. For example, Ryan and Hund were members of the conspiracy, participated in many of the racketeering incidents, and admitted receiving monies; however, their names ob-

viously did not appear in Question 4 (although monies which they acquired may have been included in the gross racketeering proceeds). Even assuming arguendo that monies received by Ryan and Hund were included by the jury in the $180,700 figure, however, based on the evidence in the case, the court is unable to find a rational basis on which to explain the large variance between the gross proceeds of $180,700 and the $15,000 total of the individual forfeitures.

**6.** In fact, under *Kravitz,* since the Third Circuit has held that RICO imposes mandatory forfeiture to the extent that property is determined to have been used for racketeering (and thus presumably on proceeds obtained from racketeering), the court must disregard the jury's $0 forfeiture award on defendant Giongo. *See Kravitz,* 738 F.2d at 105 n. 4.

Defendant Cattalo argues that the inconsistency in the jury's responses to Questions 3 and 4 is not subject to attack, because inconsistent verdicts such as the instant one "may result from compromise or leniency" and "it is the prerogative of a jury to return simultaneously inconsistent verdicts." While the court is well aware that inconsistent verdicts generally are not subject to attack, *United States v. Nelson,* 451 F.Supp. 117, 120 (M.D.Pa.1978, *aff'd,* 593 F.2d 543 (1979), the court finds *Nelson* distinguishable because in connection with RICO, forfeiture is mandatory, and the authority to remit or mitigate a RICO forfeiture rests solely with the

regard those answers for purposes of imposing forfeiture.

## B. Joint and Several Liability

■ Having decided to disregard the jury's individual apportionment (Question No. 4), the court must now decide whether the defendants are jointly and severally liable for the gross racketeering proceeds of $180,700 (Question No. 3).

Research by counsel and the court have uncovered only two reported cases addressing this issue. In *United States v. Caporale*, 806 F.2d 1487 (11th Cir.1986), *cert. denied*, 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987), four defendants challenged a RICO forfeiture order that required them to forfeit approximately $1.2 million funnelled to them as part of a kickback scheme. As a consequence of the government's inability to prove how the kickbacks had been allocated among the four defendants, the district court imposed joint and several liability upon the four defendants.

On appeal, the Eleventh Circuit rejected defendants' arguments, finding that: (1) the fact that the RICO forfeiture statute requires individuals to forfeit proceeds derived from racketeering activity in no way implies that liability may not be imposed in a joint and several fashion; (2) the nature of a RICO conspiracy violation and the legislative history of the forfeiture provision indicate that joint and several liability is consistent with the statutory scheme; (3) joint and several liability on forfeiture is not inconsistent with traditional concepts of criminal law and individual responsibility; and (4) the imposition of joint and several liability was not unfair, as the district court

had not arbitrarily apportioned the forfeiture among the four defendants, but rather left the matter of precise apportionment to the defendants themselves. 806 F.2d at 1506–09.

Similarly, in *United States v. Benevento*, 663 F.Supp. 1115 (S.D.N.Y.1987), *aff'd*, 836 F.2d 129 (2d Cir.1988), the court rejected a defendant's claim that because other co-conspirators had a joint interest in proceeds of narcotics trafficking, only his proportional share was forfeitable. Noting that the statute's sweep was "broad enough to impose joint and several liability upon those who engaged in and furthered the criminal enterprise that produced the funds subject to forfeiture," the court found the imposition of joint and several liability consistent with the language and purpose of the RICO statute. 663 F.Supp. at 1118.

Based on review of the RICO statute and the aforementioned caselaw, the court concludes that there is no bar to the imposition of joint and several liability on a RICO forfeiture verdict, and moreover, finds imposition of joint and several liability consistent with the statutory scheme. *See United States v. Caporale*, 806 F.2d 1487, 1506–09 (11th Cir.1986), *cert. denied*, 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987); *United States v. Benevento*, 663 F.Supp. 1115, 1118–19 (S.D.N.Y.1987), *aff'd*, 836 F.2d 129 (2d Cir.1988). Furthermore, in light of the court's decision to disregard the jury's answers to Question 4 (individual forfeiture amounts), the court finds that entering judgment based on the gross proceeds amount is most appropriate under the circumstances.

An appropriate Order follows.

Attorney General. *United States v. Kravitz*, 738 F.2d 102, 104–05 (3d Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1752, 84 L.Ed.2d 816 (1985). For these reasons, then, the court finds that the verdict in this case may be attacked as inconsistent.

Defendants Wilson and Grove argue that Question No. 3 (gross proceeds to the enterprise) must be disregarded, leaving Question No. 4 (individual apportionment) solely conclusive on the amount of forfeiture. Their argument is that because the enterprise charged in the indictment is the Philadelphia Police Department, and because there was no evidence in the

case to indicate that the *Police Department* received gross racketeering proceeds of $180,700, then the answer to Question 3 is unsupported by the evidence and is a nullity.

The court finds this argument meritless. Although the Police Department was the enterprise, *see* Indictment at 2, each of the defendants was identified both in the Indictment and by the evidence as members of that enterprise as well as the RICO conspiracy. *See* Indictment at 2–4, 5–101. Accordingly, the court finds the answer to Question No. 3 provides a sufficient basis on which to impose forfeiture on these defendants.

## APPENDIX A
### FORFEITURE VERDICT FORM (SUMMARIZED)

1. Do you find beyond a reasonable doubt that there are certain monies which represent an interest which the defendant(s) acquired in violation of the RICO law?

| Defendant | | | | |
|---|---|---|---|---|
| John Wilson | yes | x | no | |
| Ronald Giongo | yes | x | no | |
| David Grove | yes | x | no | |
| James Cattalo | yes | x | no | |

2. Do you find beyond a reasonable doubt that certain monies constitute, or were derived from, proceeds which the defendant(s) obtained directly or indirectly from racketeering activity?

| Defendant | | | | |
|---|---|---|---|---|
| John Wilson | yes | x | no | |
| Ronald Giongo | yes | x | no | |
| David Grove | yes | x | no | |
| James Cattalo | yes | x | no | |

3. State the total amount of gross proceeds to the enterprise that should be forfeited to the United States pursuant to the provisions of the RICO statute:

$ __180,700__

4. State the amount, if any, that each defendant is required to forfeit:

| Defendant | |
|---|---|
| John Wilson | $ 5,000 |
| Ronald Giongo | $ 0 |
| David Grove | $ 5,000 |
| James Cattalo | $ 5,000 |

---

### ORDER

AND NOW, this 12th day of December, 1989, in accordance with the accompanying memorandum, it is hereby Ordered that:

1. The government's motion to mold forfeiture verdict and for entry of judgment of forfeiture is GRANTED.

2. Pursuant to 18 U.S.C. § 1963(e), the sum of $180,700 is hereby declared and determined to be FORFEITED to the United States as proceeds of violations of 18 U.S.C. § 1962 of which the defendants have been convicted, and this Order shall constitute, and the court hereby enters, a JUDGMENT OF FORFEITURE to the United States against defendants John Wilson, Ronald Giongo, David Grove, and James Cattalo, in the amount of $180,700.

3. Pursuant to 18 U.S.C. § 1963(a)(1), (a)(3), and § 1963(e), defendants John Wilson, Ronald Giongo, David Grove, and James Cattalo are found LIABLE, JOINTLY AND SEVERALLY, in the amount of $180,700.

AND IT IS SO ORDERED.